■ In the Matter of NEW YORK TELEPHONE COMPANY et al., Appellants, v NEW YORK STATE DEPARTMENT OF LABOR et al., Respondents. [707 NYS2d 715] —Crew III, J. Appeal from a judgment of the Supreme Court (Keegan, J.), entered May 19, 1999 in Albany County, which dismissed petitioners' application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent Department of Labor adopting the International Brotherhood of Electrical Workers' electrician's wage rates as the 1997 and 1998 prevailing rates for telecommunication worker-voice data video work.

This appeal concerns the appropriate classification of and prevailing wages to be paid to workers who perform voice and data cabling services. As to voice cabling, between 1985 and 1990, respondent Department of Labor classified telephone installation work as part of the electrical trade, and the prevail-

---

* Actually, defendant paid plaintiff *$87,500* to satisfy plaintiff's judgment.

ing wage paid to such workers was determined by the collective bargaining agreements between the various local unions of the International Brotherhood of Electrical Workers (hereinafter IBEW) and their signatory employers. Beginning in 1990, the Department classified telephone installation work as a separate trade, and the prevailing wage for "inside work"* was determined in accordance with the collective bargaining agreements between the Communication Workers of America (hereinafter CWA) and AT&T. If the work in question involved a combination of inside voice and data work, the latter of which consistently had been classified as electrical work, the Department classified the work as 50% "electrician" and 50% "telephone technician" and apportioned payment between the IBEW and AT&T rates.

In 1994 and 1995 the Department, in response to certain technological advances, undertook an inquiry to determine whether voice and data cabling should be combined into a single classification. As a result thereof, the Department's 1995 prevailing wage schedule included a combined "telecommunication work" classification, which included voice, data and video cabling (hereinafter tele-data). The prevailing wage rate for this new classification was based upon the collective bargaining agreements between petitioner New York Telephone Company (hereinafter NYNEX) and CWA. Respondent Local 363 International Brotherhood of Electrical Workers challenged such classification and the prevailing wage schedule adopted, the latter of which this Court subsequently annulled (*see, Matter of Local 363, Intl. Bhd. of Elec. Workers v New York State Dept. of Labor*, 230 AD2d 440). Our decision in this regard was handed down on June 19, 1997. One day later, the Department discontinued the telecommunication work classification, began classifying tele-data work under the electrical trade and adopted the IBEW prevailing wage rate.

NYNEX and petitioner Communication Workers of America, District One, AFL-CIO thereafter commenced a proceeding pursuant to CPLR article 78 to challenge the Department's determination. Acknowledging that such determination had been rendered somewhat hastily, the Department agreed to undertake another fact-finding inquiry as to the classification and prevailing wage issues. Accordingly, the parties stipulated to a discontinuance without prejudice and the Department proceeded with the agreed-upon inquiry in February 1998 and March 1998.

---

* "Inside work" refers to work performed on the customer's side of the point of demarcation, which is the point where customer-provided equipment connects with the telephone company's facilities.

Thereafter, on or about May 27, 1998, the Department adhered to its initial determination, finding that tele-data work should continue to be merged into a single classification. As the Department also concluded that tele-data work was not sufficiently different from other "low voltage" work to warrant a separate classification, it determined that the appropriate classification for such work was as part of the electrical trade. Accordingly, the prevailing wage rate for such work would be based upon the IBEW collective bargaining agreements.

NYNEX and Communication Workers of America, District One, AFL-CIO thereafter commenced this proceeding pursuant to CPLR article 78 to annul the Department's determination. Petitioner Lucent Technologies, Inc., subsequently was granted permission to intervene as a petitioner and Local 363, together with various unions, contractors and contractors' associations, were permitted to intervene as respondents. Ultimately, Supreme Court granted the Department's motion to dismiss and this appeal by petitioners ensued.

We affirm. As to the classification issue, the case law makes clear that "[c]lassification of trades or occupations is a matter within the expertise of the Department and determinations with respect thereto should not be disturbed in the absence of a clear showing that a classification does not reflect ' "the nature of the work actually performed" ' " (*Matter of Sierra Telcom Servs. v Hartnett*, 174 AD2d 279, 283, *appeal dismissed* 79 NY2d 1039, *lv denied* 80 NY2d 756, *cert denied* 507 US 972, quoting *Matter of General Elec. Co. v New York State Dept. of Labor*, 154 AD2d 117, 120, *affd* 76 NY2d 946, quoting *Matter of Kelly v Beame*, 15 NY2d 103, 109; *see, Matter of Marangos Constr. Corp. v New York State Dept. of Labor*, 216 AD2d 758, 758-759; *Matter of Agency Constr. Corp. v Hudacs*, 205 AD2d 980, 982-983; *Matter of Otis El. Serv. v Hudacs*, 185 AD2d 483, 484-485). Petitioners failed to make such a showing here.

To be sure, the record before us contains conflicting proof on the classification issue—specifically, whether tele-data work is sufficiently similar to other low voltage work to warrant inclusion in the electrical trade classification. Nonetheless, respondents indeed submitted proof demonstrating that the skills, tasks and wiring standards applicable to tele-data work were similar to the skills, tasks and standards governing other low voltage electrical systems, including computer network, energy management, lighting control, intercom and sprinkler systems. Additional proof in the record established that the Department historically classified low voltage work as part of the electrical trade. Based upon such proof, together with our review of the

record as a whole, we cannot say that the Department's resolution of the classification issue was irrational. Petitioners' remaining arguments on this point, including their assertion that they did not have adequate notice of the scope of the issues to be addressed at the February 1998 and March 1998 inquiry, have been examined and found to be lacking in merit.

Turning to the prevailing wage governing such work, Labor Law § 220 (5) (a) provides, in relevant part, as follows: "The 'prevailing rate of wage,' shall be the rate of wage paid in the locality * * * by virtue of collective bargaining agreements between bona fide labor organizations and employers of the private sector, performing public or private work provided that said employers employ at least [30%] of workers, laborers or mechanics in the same trade or occupation in the locality where the work is being performed." In a challenge to the prevailing wage adopted, the "employer must allege and prove by competent evidence, that the actual percentage of workers, laborers or mechanics is below the required [30%]" (Labor Law § 220 [6]).

Here, there does not appear to be any dispute that 30% of the workers in the subject classification are employed under some collective bargaining agreement. Hence, the issue is not whether a collectively bargained wage applies but, rather, *which* collectively bargained wage should apply. As the Department correctly notes, Labor Law § 220 is silent as to the means of determining which prevailing wage rate should apply where, as here, the trade in question is covered by more than one collective bargaining agreement.

Although petitioners raise a number of challenges to the methodology and calculations employed by the Department, we cannot say that the Department's decision to compare only the "inside electrician hours" submitted by the competing unions was irrational; indeed, this decision and the resulting comparison is entirely consistent with the Department's classification of the work at issue. Thus, even accepting that certain infirmities existed in the figures relied upon by the Department, the record nonetheless supports the Department's finding that IBEW members worked more inside electrician hours than those workers covered by petitioners' respective agreements. That being the case, we cannot conclude that the Department's decision to adopt the IBEW prevailing wage rate was irrational. Petitioners' remaining contentions, to the extent not specifically addressed, have been examined and found to be lacking in merit.

Cardona, P. J., Peters, Rose and Lahtinen, JJ., concur. Ordered that the judgment is affirmed, without costs.