■ In the Matter of CNP MECHANICAL, INC., Petitioner, v LINDA ANGELLO, as Commissioner of Labor, Respondent. [818 NYS2d 657]—

Carpinello, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Labor Law §§ 220 and 220-b) to review a determination of respondent which found that petitioner failed to pay prevailing wages and supplements.

The Department of Labor's Bureau of Public Work conducted a lengthy investigation into whether petitioner complied with the requirements of Labor Law § 220 in the performance of

seven public work contracts that had been entered into between May 1999 and May 2000 at various sites throughout Western New York. The work performed was pursuant to seven plumbing contracts. While original audit notices claimed over $700,000 in underpayments, these notices were withdrawn. Subsequent audits were themselves revised on numerous occasions to reflect additional errors on the part of the Bureau. The matter eventually proceeded to a hearing based on audits indicating underpayments totaling $105,607.44, exclusive of interest.

A main focus of the hearing was whether petitioner properly classified particular tasks of work under each contract. On this issue, the Hearing Officer determined that certain work classified as "building laborer" by petitioner should have been classified as "plumber," thus resulting in underpayments since the plumber rate is higher than the laborer rate. The Hearing Officer specifically found, however, that these underpayments were not willful and thus refused to impose a civil penalty. Ultimately, respondent issued a final determination and order adopting the Hearing Officer's report and recommendation and finding petitioner liable for $43,710 in underpayments, plus 16% interest annually. This CPLR article 78 proceeding challenging the determination ensued.

Petitioner argues that respondent's determination classifying the disputed work as that of a plumber, as opposed to a building laborer, was arbitrary and capricious, contrary to statute and unsupported by substantial evidence. Specifically, petitioner claims that, because it relied upon respondent's published prevailing rate schedule to pay its workers on each of the seven projects and the disputed work fit within the general description of building laborer, respondent cannot make "retroactive changes" to such wage schedule in the course of a compliance proceeding. We are unpersuaded.

First, we disagree with petitioner's characterization of respondent's determination as an "ex post facto" and/or retroactive change of a classification. In short, we find no support for petitioner's claim that the prevailing rate schedule is meant to be determinative on the issue of disputed classifications (see generally Matter of Twin State CCS Corp. v Roberts, 72 NY2d 897, 899-900 [1988]). Rather, the purpose of the prevailing rate schedule is to set wages for the different work classifications in different localities (see Labor Law § 220 [3], [5] [a]). Furthermore, we are satisfied that substantial evidence supports respondent's determination that the disputed work should have been classified as plumber's work, as opposed to building laborer's work, notwithstanding the fact that such work may

have generically fit within the literal description of building laborer (*see e.g. Matter of Marangos Constr. Corp. v New York State Dept. of Labor*, 216 AD2d 758, 758-759 [1995]; *Matter of Otis E. Serv. v Hudacs*, 185 AD2d 483, 484 [1992]; *Matter of L & M Co. v New York State Dept. of Labor*, 161 AD2d 919, 919-920 [1990]).

As noted by the Court of Appeals, "while [Labor Law § 220] provides a specific process for calculating the 'prevailing rate of wage,' it does not require a specific procedure for [respondent] to use in evaluating the appropriate trade or occupation to assign to particular work" (*Matter of Lantry v State of New York*, 6 NY3d 49, 55 [2005] [citation omitted]). The court went on to point out that "it is well settled that trade classifications 'are a matter given to the expertise of the Department and courts are strongly disinclined to disturb them, absent a clear showing that a classification does not reflect "the nature of the work actually performed" ' " (*id.* [citations omitted]; *see Matter of Otis E. Serv. v Hudacs, supra* at 484-485; *Matter of General Elec. Co. v New York State Dept. of Labor*, 154 AD2d 117, 120 [1990], *affd* 76 NY2d 946 [1990]). Moreover, it is well settled that respondent may rely on collective bargaining agreements in making trade classifications (*see Matter of Lantry v State of New York, supra* at 56; *Matter of New York Tel. Co. v New York State Dept. of Labor*, 272 AD2d 741, 744 [2000], *lv denied* 95 NY2d 763 [2000]; *Matter of Otis E. Serv. v Hudacs, supra*; *Matter of Sierra Telcom Servs. v Hartnett*, 174 AD2d 279, 283 [1992], *appeal dismissed* 79 NY2d 1039 [1992], *lv denied* 80 NY2d 757 [1992], *cert denied* 507 US 972 [1993]; *Matter of Naftilos Painting & Sandblasting v Hartnett*, 173 AD2d 964, 966 [1991]).

The record reveals that the Department considered a number of factors in classifying a particular task into the appropriate trade or occupation, including the specific nature of the work, pertinent collective bargaining agreements, jurisdictional agreements, historical practice and past Department recognition. At the hearing in this matter, senior public work wage investigators established that the Department has for some time classified work on plumbing contracts, with a few exceptions not relevant here, as plumbing work.* To this end, a distinction is made between work performed within five feet of a building,

---

* To the extent that petitioner's president testified that he was told otherwise by one particular wage investigator, it was for respondent to weigh this contradictory evidence and resolve credibility questions (*see e.g. Matter of Consolidated Masonry Contrs. v Angello*, 2 AD3d 997, 998 [2003]; *Matter of Hull-Hazard, Inc. v Roberts*, 129 AD2d 348, 352 [1987], *affd* 72 NY2d 900 [1988]).

which is paid at the plumber's rate, and worked performed beyond this five-foot perimeter, which could be paid at the building laborer's rate.

Notably, this five-foot distinction was employed in both plumbing and site work contracts on the subject projects. Moreover, certain collective bargaining agreements of both trades in the locality of the projects (i.e., plumbers and laborers) recognized this distinction and assigned the disputed work to laborers only if it took place outside the five-foot perimeter of a building. Given this evidence, we cannot say that respondent's determination that the subject work constituted plumber's work was irrational or unsupported by substantial evidence (*see e.g. Matter of Consolidated Masonry Contrs. v Angello*, 2 AD3d 997, 998 [2003]; *Matter of New York Tel. Co. v New York State Dept. of Labor, supra*; *Matter of Otis E. Serv. v Hudacs, supra* at 485; *Matter of L & M Co. v New York State Dept. of Labor, supra* at 920; *Matter of General Elec. Co. v New York State Dept. of Labor, supra*).

Petitioner also argues that the award of interest at the rate of 16% per year was arbitrary and capricious. We are persuaded. First, while a former version of the statutory scheme would have permitted us to reduce the rate of interest applied to the award (*see e.g. Matter of NAB Constr. Corp. v Goldin*, 175 AD2d 245, 246 [1991]; *Fra-Dee Constr. v Roberts*, 132 AD2d 924, 925-926 [1987], *lv denied* 70 NY2d 611 [1987]; *Matter of C.E.L. Lbr. v Roberts*, 109 AD2d 1002, 1003 [1985]), its present form does not so permit (*see* Labor Law § 220-b [2] [c]). Thus, the rate of interest applied, namely, 16% per year, must remain.

However, while respondent most appropriately refused to charge petitioner interest for the time period between the completion of the first set of audits and the commencement of the hearing, we find that all interest prior to the commencement of the hearing should be eliminated (*see Matter of M. Passucci Gen. Constr. Co. v Hudacs*, 221 AD2d 987, 988 [1995], *lv denied* 87 NY2d 811 [1996]; *Matter of Georgakis Painters Corp. v Hartnett*, 170 AD2d 726, 729 [1991]). There is little dispute that nearly two years elapsed between the initial complaint of a former employee in February 2000 and the issuance of the first set of audits on January 7, 2002. There is also little dispute that this first set of audits was unsupported by even a shred of evidence. This entire initial investigatory time period—which yielded nothing short of a baseless document—was unreasonably delayed by a wage investigator who interviewed not one employee (other than the complaining one) and who knew that petitioner's own payroll records and cancelled checks utterly

contradicted this worker's claims. Since the quality and unfairness that predominated the unreasonably lengthy investigatory period was clear, interest during such period should also be excluded.

Petitioner's remaining contentions have been reviewed and found to be without merit.

Cardona, P.J., Mercure, Peters and Spain, JJ., concur. Adjudged that the determination is modified, without costs, by eliminating interest for the period of February 2000 to January 7, 2002, and, as so modified, confirmed.