[995 NE2d 153, 972 NYS2d 191]

Jeana Barenboim et al., Appellants, v Starbucks Corporation, Respondent.

Eugene Winans et al., Appellants, et al., Plaintiff, v Starbucks Corporation, Respondent.

Argued May 28, 2013; decided June 26, 2013

POINTS OF COUNSEL

*Lichten & Liss-Riordan, P.C.*, Boston, Massachusetts (*Shannon Liss-Riordan* of counsel), and *Joseph, Herzfeld, Hester & Kirschenbaum LLP*, New York City (*Daniel Maimon Kirschenbaum* of counsel), for appellants in the first above-entitled action. I. An employee who is a supervisor is an "agent" under Labor Law § 196-d. (*People v Dugan*, 91 Misc 2d 239; *O'Neil v Roman Catholic Diocese of Brooklyn*, 31 Misc 3d 1219, 98 AD3d 485; *Southern Ind. Gas & Elec. Co. v National Labor Relations Bd.*, 657 F2d 878; *Herman v RSR Sec. Servs. Ltd.*, 172 F3d 132; *Lauria v Heffernan*, 607 F Supp 2d 403.) II. The Department of Labor's Wage Order concerning Labor Law § 196-d is not entitled to judicial deference. (*Chevron U.S.A. Inc. v Natural Resources Defense Council, Inc.*, 467 US 837; *Matter of Albano v Board of Trustees of N.Y. City Fire Dept., Art. II Pension Fund*, 98 NY2d 548; *Matter of Gruber [New York City Dept. of Personnel—Sweeney]*, 89 NY2d 225; *Matter of Action Elec. Contrs. Co. v Goldin*, 64 NY2d 213; *Boreali v Axelrod*, 71 NY2d 1; *Matter of John Paterno, Inc. v Curiale*, 88 NY2d 328; *Matter of New York Pub. Interest Research Group v New York State Dept. of Ins.*, 66 NY2d 444; *Matter of Trump-Equitable Fifth Ave. Co. v Gliedman*, 57 NY2d 588; *Kurcsics v Merchants Mut. Ins. Co.*, 49 NY2d 451; *Doo Nam Yang v ACBL Corp.*, 427 F Supp 2d 327.)

*Outten & Golden LLP*, New York City (*Adam T. Klein, Lewis M. Steel* and *Molly A. Brooks* of counsel), and *Outten & Golden LLP*, Chicago, Illinois (*Paul W. Mollica* of counsel), for appellants in the second above-entitled action. I. An "agent" under Labor Law § 196-d is an employee who has full authority on management decisions. (*Matter of Board of Educ. of City School Dist. of City of N.Y. v Mills*, 250 AD2d 122; *Matter of American Tel. & Tel. Co. v State Tax Commn.*, 61 NY2d 393; *Matter of Lezette v Board of Educ., Hudson City School Dist.*, 35 NY2d 272; *Matter of Lesher v Hynes*, 19 NY3d 57; *Matter of Fink v Lefkowitz*, 47 NY2d 567; *Matter of Aurecchione v New York State Div. of Human Rights*, 98 NY2d 21; *Ayres v 127 Rest. Corp.*, 12 F Supp 2d 305; *Chu Chung v New Silver Palace Rests., Inc.*, 272 F Supp 2d 314; *Herman v RSR Sec. Servs. Ltd.*, 172 F3d 132; *Carter v Dutchess Community Coll.*, 735 F2d 8.) II. Labor Law § 196-d prohibits employers from excluding otherwise tip-eligible employees from participating in a tip pool. III. The Labor Law should be liberally construed in favor of employees.

(*In re Novartis Wage & Hour Litig.*, 611 F3d 141; *Martin v Malcolm Pirnie, Inc.*, 949 F2d 611.)

*Akin Gump Strauss Hauer & Feld LLP*, Los Angeles, California (*Rex S. Heinke, Gregory W. Knopp, Katharine J. Galston* and *L. Rachel Lerman*, of the California bar, admitted pro hac vice, of counsel), *Akin Gump Strauss Hauer & Feld LLP*, New York City (*Samidh Guha* of counsel), and *Akin Gump Strauss Hauer & Feld LLP*, Washington, D.C. (*Daniel L. Nash* and *Nathan J. Oleson*, of the District of Columbia bar, admitted pro hac vice, of counsel), for respondent in the first and second above-entitled actions. I. New York's tipping statute permits tip sharing and pooling arrangements among employees "similar" to waiters and busboys, who are "primarily engaged" in customer service, while prohibiting those with true, managerial authority and control from sharing tips with subordinates. (*Samiento v World Yacht Inc.*, 10 NY3d 70; *Matter of DaimlerChrysler Corp. v Spitzer*, 7 NY3d 653; *Riley v County of Broome*, 95 NY2d 455; *Matter of Chesterfield Assoc. v New York State Dept. of Labor*, 4 NY3d 597; *Ayres v 127 Rest. Corp.*, 12 F Supp 2d 305; *Ferraiolo v O'Dwyer*, 302 NY 371; *Matter of Golf v New York State Dept. of Social Servs.*, 91 NY2d 656; *Matter of Trump-Equitable Fifth Ave. Co. v Gliedman*, 57 NY2d 588; *Doo Nam Yang v ACBL Corp.*, 427 F Supp 2d 327; *Matter of American Tel. & Tel. Co. v State Tax Commn.*, 61 NY2d 393.) II. Starbucks Corporation's policy of including shift supervisors in its tip pools is fully consistent with New York law. (*Rosner v Metropolitan Prop. & Liab. Ins. Co.*, 96 NY2d 475; *Samiento v World Yacht Inc.*, 10 NY3d 70; *People v Illardo*, 48 NY2d 408; *In re Novartis Wage & Hour Litig.*, 611 F3d 141; *Matamoros v Starbucks Corp.*, 699 F3d 129; *LaForte v Horner*, 833 F2d 977; *American Fedn. of State, County & Mun. Empls., AFL-CIO [AFSCME] v Nassau County*, 609 F Supp 695.) III. Starbucks Corporation's policy of *not* including assistant store managers in its tip pools, but instead agreeing to compensate those managerial employees in other ways, is fully consistent with New York law. (*Abdu-Brisson v Delta Air Lines, Inc.*, 239 F3d 456; *Ayres v 127 Rest. Corp.*, 12 F Supp 2d 305; *Matter of Charter Dev. Co., L.L.C. v City of Buffalo*, 6 NY3d 578; *Matter of World Trade Ctr. Bombing Litig.*, 17 NY3d 428; *Henry Modell & Co. v Minister, Elders & Deacons of Ref. Prot. Dutch Church of City of N.Y.*, 68 NY2d 456; *Samiento v World Yacht Inc.*, 10 NY3d 70; *Scotto v Almenas*, 143 F3d 105; *Argus Inc. v Eastman Kodak Co.*, 801 F2d 38.) IV. Starbucks Corporation's tip policy is consistent with this Court's directive that labor laws be liberally construed in favor of employees. (*Samiento v World Yacht Inc.*, 10 NY3d 70.)

*Eric T. Schneiderman, Attorney General*, New York City (*Steven C. Wu, Barbara D. Underwood* and *Julie M. Sheridan* of counsel), for New York State Department of Labor, amicus curiae in the first and second above-entitled actions. I. Eligibility to participate in a tip-splitting arrangement depends on the extent to which an employee performs direct customer service. (*Commissioner v Soliman*, 506 US 168; *Weingarten v Board of Trustees of N.Y. City Teachers' Retirement Sys.*, 98 NY2d 575; *Samiento v World Yacht Inc.*, 10 NY3d 70; *Matter of County of Albany v Hudson Riv.-Black Riv. Regulating Dist.*, 97 AD3d 61, 19 NY3d 816; *Matter of Judd v Constantine*, 153 AD2d 270; *Ayres v 127 Rest. Corp.*, 12 F Supp 2d 305; *Matter of OnBank & Trust Co.*, 90 NY2d 725; *Columbus 95th St., LLC v New York State Div. of Hous. & Community Renewal*, 81 AD3d 269.) II. It is premature to rule on the propriety of Starbucks Corporation's specific exclusionary policy here. (*New York Pub. Interest Research Group v Carey*, 42 NY2d 527; *Samiento v World Yacht Inc.*, 10 NY3d 70.)

*Jackson Lewis LLP*, New York City (*Jeffrey W. Brecher, Felice B. Ekelman, Noel P. Tripp* and *Tara Touloumis* of counsel), for New York State Restaurant Association, Inc., amicus curiae in the first and second above-entitled actions. I. Labor Law § 196-d prohibits an "employer" or anyone acting on its behalf from misappropriating tips received by employees who participate in providing personal service to patrons; it does not prohibit "agents" or "supervisors" or any other person from participating in a tip pool so long as he or she provides personal service to patrons. (*Samiento v World Yacht Inc.*, 10 NY3d 70; *Wildenstein & Co. v Wallis*, 79 NY2d 641; *Matter of Southeast Banking Corp.*, 93 NY2d 178; *Herman v RSR Sec. Servs. Ltd.*, 172 F3d 132; *Stoganovic v Dinolfo*, 92 AD2d 729, 61 NY2d 812; *Andux v Woodbury Auto Park, Inc.*, 30 AD3d 362; *Renzler v D.F. White, Inc.*, 267 AD2d 443.) II. New York Labor Law permits employees who provide personal service to patrons to retain tips they receive directly from patrons and participate in a tip splitting arrangement with coworkers who also provide personal service to patrons. (*Samiento v World Yacht Inc.*, 10 NY3d 70; *Matter of DaimlerChrysler Corp. v Spitzer*, 7 NY3d 653; *CFCU Community Credit Union v Hayward*, 552 F3d 253; *Jacobus v Colgate*, 217 NY 235; *Matter of City of New York [Long Is. Sound Realty Co.]*, 160 AD2d 696; *Shahriar v Smith & Wollensky Rest. Group, Inc.*, 659 F3d 234.) III. Nothing in Labor Law § 196-d *requires* an employer to include all employees who perform personal service in a tip pool. (*Kronick v L.P. Thebault Co., Inc.*, 70 AD3d 648;

*Cole v Mandell Food Stores*, 93 NY2d 34; *Hines v State Room, Inc.*, 665 F3d 235.)

*Gladstein, Reif & Meginniss LLP*, New York City (*James Reif* of counsel), and *Harrison, Harrison & Associates, Ltd.* (*David Harrison* of counsel) for UNITE HERE! Local 100 and others, amici curiae in the first and second above-entitled actions. I. The Court should apply Labor Law § 196-d as written to exclude supervisors and managers from employee tip pools. (*Matter of Malta Town Ctr. I, Ltd. v Town of Malta Bd. of Assessment Review*, 3 NY3d 563; *Matamoros v Starbucks Corp.*, 699 F3d 129; *Chung v New Silver Palace Rest., Inc.*, 246 F Supp 2d 220; *Ayres v 127 Rest. Corp.*, 12 F Supp 2d 305.) II. The Court should interpret Labor Law § 196-d to ensure maximum protection of tips to non-agent employees. (*Matter of Angello v Labor Ready, Inc.*, 7 NY3d 579.) III. The Court need not give deference to the tip pooling portion of the Department of Labor's hospitality order because it does not derive from the language of the statute. (*Matter of Trump-Equitable Fifth Ave. Co. v Gliedman*, 57 NY2d 588; *Chung v New Silver Palace Rest., Inc.*, 246 F Supp 2d 220; *Barrentine v Arkansas-Best Freight System, Inc.*, 450 US 728.)

*Fox Rothschild LLP*, New York City (*Carolyn D. Richmond, Eli Z. Freedberg* and *Rosemary P. Joyce* of counsel), for New York City Hospitality Alliance, amicus curiae in the first and second above-entitled actions. I. The Labor Law's definition of "agent" is not relevant to the analysis of who is entitled to participate in a tip pool. (*Matter of Charter Dev. Co., L.L.C. v City of Buffalo*, 6 NY3d 578; *Samiento v World Yacht Inc.*, 10 NY3d 70; *Chu Chung v New Silver Palace Rests., Inc.*, 272 F Supp 2d 314; *Saunders v Big Brothers*, 115 Misc 2d 845; *P & L Group v Garfinkel*, 150 AD2d 663; *Matter of Hartnett v Wade-Mark Eleven*, 156 AD2d 559; *Lanzetta v Florio's Enters., Inc.*, 763 F Supp 2d 615; *Hai Ming Lu v Jing Fong Rest., Inc.*, 503 F Supp 2d 706; *Ayres v 127 Rest. Corp.*, 12 F Supp 2d 305.) II. Employees who possess some supervisory authority are not prohibited from participating in a tip pool. (*Fowler v Scores Holding Co., Inc.*, 677 F Supp 2d 673; *Shahriar v Smith & Wollensky Rest. Group, Inc.*, 659 F3d 234; *Hai Ming Lu v Jing Fong Rest., Inc.*, 503 F Supp 2d 706; *Kilgore v Outback Steakhouse of Fla., Inc.*, 160 F3d 294; *Myers v Copper Cellar Corp.*, 192 F3d 546; *Samiento v World Yacht Inc.*, 10 NY3d 70.) III. To the extent the definition of the term "agent" is material, food service employees with some supervisory responsibilities do not qualify as "agents." (*Ayres v 127 Rest. Corp.*, 12 F Supp 2d 305; *Shahriar*

*v Smith & Wollensky Rest. Group, Inc.*, 659 F3d 234.) IV. Labor Law § 196-d does not compel an employer to include all service employees in a tip pool. (*People ex rel. Harris v Sullivan*, 74 NY2d 305; *Samiento v World Yacht Inc.*, 10 NY3d 70.)

## OPINION OF THE COURT

GRAFFEO, J.

The United States Court of Appeals for the Second Circuit has posed two questions regarding the legality of Starbucks Corporation's tip-splitting policy under Labor Law § 196-d.

### I.

Defendant Starbucks Corporation is a Washington-based coffeehouse company that operates hundreds of outlets in New York State. In each store, Starbucks employs four categories of employees: baristas, shift supervisors, assistant store managers and store managers. Baristas are the front-line, entry-level employees responsible for tasks such as taking orders, making and serving the company's coffee, tea and food offerings, operating the cash register, cleaning tables and stocking product. They work on a part-time, hourly basis.

After six months' employment, baristas may become eligible for promotion to shift supervisors. Like baristas, shift supervisors are primarily responsible for serving food and beverages to customers. In fact, they spend nearly all their time performing the same customer-related duties undertaken by baristas. They also work on a part-time basis and are paid an hourly wage. As their title suggests, however, shift supervisors have some supervisory responsibilities, such as assigning baristas to particular positions during their shifts, directing the flow of customers and providing baristas with feedback about their performance. Shift supervisors may also open and close stores, change the cash register tills and, if neither an assistant store manager nor store manager is present, make bank deposits.

Assistant store managers represent the third rung in the Starbucks hierarchy. Although assistant store managers devote the majority of their time performing customer-oriented services, they also possess greater managerial and supervisory authority than shift supervisors. For example, they assist store managers in interviewing applicants, assigning work shifts to baristas and shift supervisors, and evaluating employee performance. They also participate in decisions to hire or fire employees, recommend corrective action for employee infractions and process

payroll. In essence, an assistant store manager functions as the store manager's deputy. In contrast to baristas and shift supervisors, assistant store managers are full-time employees who receive a salary if they work at least 37 hours per week. And unlike baristas and shift supervisors, they are eligible for quarterly bonuses and certain benefits, including holiday and sick pay.

Finally, store managers constitute the highest rank in the workforce structure. With the support of assistant store managers, store managers are responsible for the overall operation of the store. They have the power to hire, promote, transfer, schedule, discipline and terminate baristas and shift supervisors. Store managers, like assistant store managers, are full-time, salaried employees who are eligible for various benefits.

Starbucks maintains a written policy governing the collection, storage and distribution of customer tips. Pursuant to this policy, each Starbucks store places a plexiglass container at the counter where patrons may deposit tips. Once these tip canisters become full, Starbucks requires that they be emptied into a bag and the money is stored in a safe. At the end of each week, the tips are tallied and distributed in cash to two categories of employees—baristas and shift supervisors—in proportion to the number of hours each employee worked. Starbucks does not permit its assistant store managers or store managers to share in the weekly distribution of tips. The company's decision to include shift supervisors in these tip pools was the impetus for the first lawsuit before us, while its exclusion of assistant store managers underlies the claims in the second action.

In 2008, plaintiffs Jeana Barenboim and Jose Ortiz (collectively, Barenboim), two former Starbucks baristas, brought a putative class action in the United States District Court for the Southern District of New York alleging that Starbucks' policy of including shift supervisors in the tip pools was unlawful under Labor Law § 196-d. In particular, Barenboim claimed that shift supervisors should not be able to receive distributions from a store's tip pool because they are Starbucks "agents" who may not "demand or accept, directly or indirectly, any part of the gratuities, received by an employee" (Labor Law § 196-d). In other words, Barenboim contended that the tip jar proceeds belong exclusively to Starbucks baristas. On cross motions for summary judgment, the District Court granted Starbucks' motion, concluding that Labor Law § 196-d does not bar shift supervisors from participating in tip pools because their limited

supervisory responsibilities "do not carry the broad managerial authority or power to control employees that courts have held to be sufficient to render an employee an 'employer or [employer's] agent' within the meaning of Section 196-d" (*In re Starbucks Empl. Gratuity Litig.*, 264 FRD 67, 72 [SD NY 2009]). Barenboim appealed.

Meanwhile, plaintiff Eugene Winans and four other former Starbucks assistant store managers (collectively, Winans) filed a separate complaint in the same court asserting that assistant store managers are not ineligible "agents" and, therefore, they should be entitled to participate in the tip pools under Labor Law § 196-d. Put differently, they claimed that the tips should be distributed among baristas, shift supervisors *and* assistant store managers. On cross motions for summary judgment, the District Court concluded that there was a triable issue of fact as to whether assistant store managers are tip-pool eligible but awarded Starbucks summary judgment on the ground that, although Labor Law § 196-d excludes an employer or its agent from retaining tips, it does not compel an employer to include any particular eligible employee in a tip pool (*Winans v Starbucks Corp.*, 796 F Supp 2d 515 [SD NY 2011]). Winans appealed.

Recognizing that the two appeals presented unresolved questions of New York law, the Second Circuit certified the following questions to us:

> "1. What factors determine whether an employee is an 'agent' of his employer for purposes of N.Y. Lab. Law § 196-d and, thus, ineligible to receive distributions from an employer-mandated tip pool? In resolving this question for purposes of this case, the Court of Appeals may also consider the following subsidiary questions:

> "a. Is the degree of supervisory or managerial authority exercised by an employee relevant to determining whether the employee is a 'manager [or] supervisor' under N.Y. Lab. Law § 2(8-a) and, thus, an employer's 'agent' under § 196-d?

> "b. If an employee with supervisory or managerial authority renders services that generate gratuities contributed to a common tip pool, does § 196-d preclude that employee from sharing in the tip pool?

"c. To the extent that the meaning of 'employer or his agent' in § 196-d is ambiguous, does the Department of Labor's New York State Hospitality Wage Order constitute a reasonable interpretation of the statute that should govern disposition of these cases?

"d. If so, does the Hospitality Wage Order apply retroactively?

"2. Does New York Labor law permit an employer to exclude an otherwise eligible tip-earning employee under § 196-d from receiving distributions from an employer-mandated tip pool?" (698 F3d 104, 118 [2d Cir 2012]).

The Second Circuit clarified that it did not intend to "bind" us "to the particular questions stated" and invited this Court to "expand these certified inquiries to address any further pertinent question of New York law as it might pertain to the particular circumstances presented in these appeals" (*id.*).

## II.

Labor Law § 196-d, admittedly not a model of clarity, provides in relevant part as follows:

"No employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee. . . . Nothing in this subdivision shall be construed as affecting the . . . sharing of tips by a waiter with a busboy or similar employee."

The first sentence of the statute, adopted in 1968, was intended to "end the unfair and deceptive practice of an employer retaining money paid by a patron under the impression that he is giving it to the employee, not to the employer" (*Samiento v World Yacht Inc.*, 10 NY3d 70, 79 n 4 [2008] [internal quotation marks and citation omitted]). The last sentence, which preserves tip sharing among waiters, busboys and "similar employee[s]," was added at the request of the restaurant and hotel industries to preserve the legality of commonplace tip-splitting practices in those businesses (*see* Mem of Indus Commr, June 6, 1968, Bill Jacket, L 1968, ch 1007 at 4).

On this appeal, Barenboim and Winans focus on the first sentence of Labor Law § 196-d and, in particular, on the term "agent."[1] Barenboim asserts that any supervisory responsibility, however slight, renders an employee (such as a shift supervisor) an agent and, therefore, ineligible to participate in a tip pool. Winans argues the opposite position, contending that only employees with "full" managerial authority—i.e., the ability to hire and fire subordinates—should be viewed as agents and, as a result, assistant store managers remain eligible for tip distribution. Taking a different tack, Starbucks relies on the final sentence of the statute in claiming that shift supervisors are sufficiently similar to waiters, busboys and the like, and should be viewed as eligible to share in tips, while assistant store managers, by virtue of their significant managerial responsibility, stand on substantially different footing from baristas and shift supervisors, making them tip-pool ineligible.

Aside from the arguments of the parties themselves, the New York State Department of Labor (DOL) appears as amicus curiae, lending us its view of the case. Like Starbucks, the DOL draws our attention to the last sentence of Labor Law § 196-d and submits that it contains the operative language relevant to tip-splitting practices. According to the DOL, employees who are "similar" to waiters and busboys may share in tips while employees who are dissimilar to those positions may not. Because the first certified question, as framed by the Second Circuit, centers on the term "agent" rather than the phrase "similar employee," the DOL suggests that we slightly reformulate it to ask:

> "What factors determine whether an employee is eligible or ineligible to receive distributions from an employer-mandated tip-splitting arrangement?"

We accept the DOL's reframed first question and now turn to the task of answering it.[2]

We have recognized that the DOL's "interpretation of a statute it is charged with enforcing is entitled to deference"

---

1. The Labor Law elsewhere defines an " '[a]gent' of a corporation" to include, but not be limited to, "a manager, superintendent, foreman, supervisor or any other person employed acting in such capacity" (Labor Law § 2 [8-a]).

2. *Notably, although the Second Circuit singled out the word "agent" in its first question, it recognized the import of Labor Law § 196-d's last sentence—and the "similar employee" language—to this case throughout its opinion (see 698 F3d at 106, 109, 111, 113, 115). We believe that in certifying*

*(n. cont'd)*

(*Samiento*, 10 NY3d at 79; *see also Matter of Chesterfield Assoc. v New York State Dept. of Labor*, 4 NY3d 597, 604 [2005] [explaining that the "construction given statutes and regulations by the agency responsible for their administration, if not irrational or unreasonable, should be upheld" (internal quotation marks and citation omitted)]). Indeed, we previously deferred to the DOL's reading of Labor Law § 196-d, the very statute at the heart of this case (*see Samiento*, 10 NY3d at 79 [agreeing with the DOL that a charge that is not voluntary may nevertheless be a "charge purported to be a gratuity" within the meaning of the first sentence of section 196-d such that the employer may not pocket it]). Hence, our analysis begins with the DOL's interpretation of the tip-sharing language of section 196-d and, in particular, the meaning of the phrase "similar employee."

In January 2011, the DOL promulgated the Hospitality Industry Wage Order (the Wage Order), codified at 12 NYCRR part 146. As relevant to this case, the Wage Order clarified and unified the DOL's tip-splitting policies previously found in a patchwork of opinion letters and a set of written guidelines dating back to 1972.[3] The Wage Order makes clear that an employee's ability to participate in a tip pool under the last sentence of Labor Law § 196-d "shall be based upon duties and not titles" (12 NYCRR 146-2.14 [e]). The Wage Order also codified the DOL's long-standing construction of section 196-d as limiting tip-pool eligibility to workers who "perform, or assist in performing, personal service to patrons at a level that is a principal and regular part of their duties and is not merely occasional or incidental" (*id.*). It is therefore evident that employer-mandated tip splitting should be limited to employees

---

the first question, the Second Circuit was interested in knowing both whether an employee's supervisory responsibilities are relevant to ascertaining tip-pool eligibility and, if so, the point at which an employee's authority becomes too great to remain eligible to participate in a tip pool. The reformulated question addresses these inquiries.

3. The Wage Order defines tip sharing as "the practice by which a directly tipped employee gives a portion of his or her tips to another service employee or food service worker who participated in providing service to customers and keeps the balance" (12 NYCRR 146-2.14 [a]). It describes tip pooling as "the practice by which the tip earnings of directly tipped employees are intermingled in a common pool and then redistributed among directly and indirectly tipped employees" (12 NYCRR 146-2.14 [b]). In its brief, the DOL notes that Starbucks' tip distribution plan "shares features of both practices" and interchangeably refers to it as a policy of tip sharing, tip pooling or tip splitting, as do we.

who, like waiters and busboys, are ordinarily engaged in personal customer service, a rule that comports with the "expectation[s] of the reasonable customer" (*Samiento*, 10 NY3d at 79).

Moreover, contrary to Barenboim's (i.e., the baristas') position, the DOL has consistently and, in our view, reasonably, maintained that employees who regularly provide direct service to patrons remain tip-pool eligible even if they exercise a limited degree of supervisory responsibility. Both the 1972 guidelines and the Wage Order identify "captains" as employees who are able to participate in tip sharing under Labor Law § 196-d (*see* 12 NYCRR 146-2.14 [e] [8] ["captains who provide direct food service to customers"]). Manifestly, captains enjoy some supervisory authority over other waitstaff, yet such responsibility does not, by itself, render them sufficiently dissimilar to waiters and busboys so as to preclude their participation in tip pools. Consequently, we cannot agree with Barenboim's contention that even the slightest degree of supervisory responsibility automatically disqualifies an employee from sharing in tips under Labor Law § 196-d.[4]

Barenboim relies heavily on *Matamoros v Starbucks Corp.* (699 F3d 129 [1st Cir 2012]) in support of her section 196-d claim, but that case is readily distinguishable. In *Matamoros*, a class of baristas in Massachusetts similarly challenged Starbucks' policy of including shift supervisors in the communal tip pool, arguing that it violated the Massachusetts Tips Act. That statute, unlike section 196-d, contained an express limitation— wait staff employees could only share tips with fellow wait staff who had "no managerial responsibility" (*id.* at 133). The First Circuit held that the Tips Act created a bright-line rule excluding employees with any level of managerial responsibility, however minimal, from tip sharing and concurred with the baristas that Starbucks shift supervisors could not receive distributions.

---

4. The Second Circuit queried whether the relevant tip-splitting provisions of the Wage Order, promulgated in 2011, could be applied to these 2008 lawsuits. We discern no retroactivity problem. Although retroactive operation of an enactment is generally disfavored, retroactive effect occurs only when the enactment's application "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed" (*Landgraf v USI Film Products*, 511 US 244, 280 [1994]). Here, the pertinent portions of the Wage Order do not create new rights or duties and merely elaborate upon the DOL's preexisting understanding of Labor Law § 196-d.

In reaching this conclusion, the First Circuit relied on the unequivocal language of the Massachusetts statute (*see id.* at 134 [" 'no' means 'no' "]) as well as interpretive guidance from the Massachusetts Attorney General, who had likewise construed the provision in a manner consistent with the baristas' claim. In stark contrast, New York's Labor Law § 196-d does not set forth a categorical prohibition against tip splitting by employees with any inkling of supervisory responsibility. Further, the DOL—the agency charged with the enforcement of section 196-d —directly opposes Barenboim's proposed construction. As such, we decline to apply the analysis in *Matamoros.*

On the other hand, Winans, on behalf of the assistant store managers, suggests that employees should be deemed "similar" to waiters and busboys—and eligible to share in tips—so long as they do not have full or final authority to terminate subordinates. But we believe that there comes a point at which the degree of managerial responsibility becomes so substantial that the individual can no longer fairly be characterized as an employee similar to general wait staff within the meaning of Labor Law § 196-d. We conclude that the line should be drawn at meaningful or significant authority or control over subordinates. Meaningful authority might include the ability to discipline subordinates, assist in performance evaluations or participate in the process of hiring or terminating employees, as well as having input in the creation of employee work schedules, thereby directly influencing the number and timing of hours worked by staff as well as their compensation. In other words, contrary to Winans' view, the power to hire and fire is not the exclusive test. The Second Circuit recognized that the parties' dispute in the *Winans* case "is more legal than factual, with resolution depending on whether New York views final decisionmaking authority as necessary" (698 F3d at 114). Meaningful authority, not final authority, should be the standard.

In sum, an employee whose personal service to patrons is a principal or regular part of his or her duties may participate in an employer-mandated tip-allocation arrangement under Labor Law § 196-d, even if that employee possesses limited supervisory responsibilities. But an employee granted meaningful authority or control over subordinates can no longer be considered similar to waiters and busboys within the meaning of section 196-d and, consequently, is not eligible to participate in a tip pool. We

leave it to the federal courts to apply these principles to the *Barenboim* and *Winans* cases.[5]

## III.

Turning to the second certified question, the Second Circuit asks whether an employer may deny tip-pool distributions to an employee who is nevertheless eligible to split tips under Labor Law § 196-d. The second question relates to the *Winans* case because, should the federal courts determine that assistant store managers are eligible to participate in tip pools (on the basis that they do not possess meaningful authority), the legality of Starbucks' policy of excluding them from the tip jars would be implicated.

█ The District Court in *Winans* reached this issue and upheld Starbucks' practice, reasoning that Labor Law § 196-d merely defines who is eligible or ineligible to join in a tip pool and does not grant an otherwise eligible employee an affirmative right to participate in tip pools or receive tip distributions. Put differently, the District Court effectively answered the second question in the affirmative, holding that Labor Law § 196-d excludes certain people from an employer-mandated tip pool but does not require the inclusion of all employees not statutorily barred from participation. We generally agree with the District Court's reading of the statute but leave open the possibility that there may be an outer limit to an employer's ability to excise certain classifications of employees from a tip pool. For example, the DOL suggests that an employer should not be permitted to "give *all* of the distributions from a tip-splitting arrangement to only the highest-ranking eligible employee." We need not resolve this hypothetical scenario, however, because it is clear that Starbucks' decision to exclude assistant store managers from the tip pool is not contrary to Labor Law § 196-d.

---

5. Judge Smith's dissent, giving no deference to the DOL, relies on a California case to support his view that Labor Law § 196-d has no application to the distribution of a communal tip pool (*see Jou Chau v Starbucks Corp.*, 174 Cal App 4th 688, 94 Cal Rptr 3d 593 [Ct App, 4th Dist 2009]). But the statute at issue in *Jou Chau* contains no tip-sharing language analogous to the last sentence of New York's Labor Law § 196-d. Moreover, the court in *Jou Chau* stated that its analysis related solely to Starbucks shift supervisors (*id.* at 704-705 ["Our ruling is based only on the particular and narrow facts before us"]) and acknowledged that its "legal reasoning and conclusions would not be controlling" were assistant store managers at issue (*id.* at 705)—as they are here.

Accordingly, the first certified question, as reformulated, and the second certified question should be answered in accordance with this opinion.

Smith, J. (dissenting in part). I agree with the majority to the extent that I too would answer the Second Circuit's questions in a way favorable to Starbucks and adverse to plaintiffs in both cases. I would proceed by a simpler route, however: I think Labor Law § 196-d is inapplicable to this case.

The conduct forbidden by the statute is to "demand or accept . . . any part of the gratuities . . . received by an employee" or to "retain any part of a gratuity or of any charge purported to be a gratuity for an employee." In plainer language, neither the boss nor (with some exceptions) a fellow worker may take or demand part of a worker's tips. No one is doing that in this case. This case involves tips not given to any particular employee, but put into a common pool. The only issue is how the pool is to be shared among the people who earn the tips—a subject on which the statute has nothing to say. No doubt, if Starbucks itself were taking a piece of the pool, or if higher-level employees were coercing baristas to give up part of the share that Starbucks allotted them, the statute would be triggered, but that is not what is going on.

The purpose of the statute is no less plain than its language. As we said in *Samiento v World Yacht Inc.* (10 NY3d 70, 79 n 4 [2008]), quoting from the legislative history:

> "The drafters of Labor Law § 196-d sought to end the 'unfair and deceptive practice' of an employer retaining money paid by a patron 'under the impression that he is giving it to the employee, not to the employer' (*see* Mem of Indus Commr, June 6, 1968, Bill Jacket, L 1968, ch 1007, at 4)."

This case does not involve that "unfair and deceptive practice" or anything resembling it, and that should end the case.

Some federal decisions have made the New York law of tipping more complicated than it needs to be by drawing an analogy between Labor Law § 196-d, a simple prohibition of a rather clear abuse, and 29 USC § 203 (m), which deals with a less simple question of federal law: the extent to which an employer may credit tips against the minimum wage (*see Shahriar v Smith & Wollensky Rest. Group, Inc.*, 659 F3d 234, 241 [2d Cir 2011] ["Thus, 29 U.S.C. § 203(m) and § 196-d bar the same

types of tipping practices, and actions that violate the tip pooling provision of 29 U.S.C. § 203(m) may also violate § 196-d"]). But we are not bound by the federal courts' interpretation of New York law, and I would not follow it here. I think more useful guidance can be found in *Jou Chau v Starbucks Corp.* (174 Cal App 4th 688, 94 Cal Rptr 3d 593 [2009]), in which the court interpreted California Labor Code § 351, a statute quite similar to our section 196-d. Under the California statute: "No employer or agent shall collect, take, or receive any gratuity or a part thereof that is paid, given to, or left for an employee by a patron."

*Jou Chau* was a class action by Starbucks baristas essentially identical to the *Barenboim* case we have here. The court dismissed the case, drawing a distinction between an employer's authority to compel the sharing of a tip "given to an individual service employee" and the authority "to require equitable allocation of tips placed in a collective tip box" (174 Cal App 4th at 691, 94 Cal Rptr 3d at 594-595 [emphasis omitted]). The *Jou Chau* court decided the case without interpreting the term "agent" in Labor Code § 351, concluding that "[e]ven if shift supervisors can be considered 'agents' . . . Starbucks did not violate section 351 by permitting shift supervisors to share in the tip proceeds that were left in a collective tip box for baristas *and* shift supervisors" (174 Cal App 4th at 696, 94 Cal Rptr 3d at 598). The policy behind section 351, the court explained, was "to protect employees from employers who used their positions to unfairly command a share of the employee's tip" (*id.*). Because the distribution of a common tip pool does not implicate that policy, the court held section 351 not to be violated. I would adopt a similar line of reasoning here.

Because I think the statute is inapplicable, I would answer no to question 1 (b) (asking whether Labor Law § 196-d precludes an employee with supervisory or managerial authority from sharing in a common tip pool) and yes to question 2 (asking whether an employer may exclude an otherwise eligible tip-earning employee from such a pool), and would treat the other questions as academic. The majority's contrary approach extends the statute to a situation that does not involve the abuse the legislature sought to prohibit—or, as far as I can see, any abuse at all. This has the unfortunate effect of leaving open a large category of tips to regulation by the Department of Labor and to litigation over when the tips have and have not been properly distributed. What good this does, other than the full employment of regulators and of lawyers, is not clear to me.

RIVERA, J. (concurring in part, dissenting in part). I agree with the majority's conclusion, with respect to the first question certified from the United States Court of Appeals for the Second Circuit, that an employee who exercises meaningful authority or control over subordinates is an employer's "agent" ineligible to receive and retain gratuities under Labor Law § 196-d. However, based on our answer to the first certified question, the complex factual issues that may impact the application of section 196-d as suggested by the majority's discussion of the second certified question, and the current posture of the *Winans* case in the federal courts, I would decline to answer the second certified question.

Our answer to the first certified question sets forth the "meaningful authority standard" as the proper standard to determine whether an employee is an agent of the employer under section 196-d. The application of that standard in *Winans* is left to the federal courts, and the Second Circuit may decide the appeal based solely on our answer to the first certified question, obviating the need to consider the majority's answer to the second certified question.

The majority's answer to the second certified question, "whether an employer may deny tip-pool distributions to an employee who is nevertheless eligible to split tips under Labor Law § 196-d" (majority op at 474), is qualified. The majority asserts its general agreement with the District Court that section 196-d does not mandate inclusion of all employees not statutorily barred from participation, but "leave[s] open the possibility that there may be an outer limit to an employer's ability to excise certain classifications of employees from a tip pool" (*id.*). That is, the majority recognizes that there are statutory reins on the employer's attempts to exclude tip-eligible employees from the tip pool. However, the majority refrains from considering the statutory boundaries because it concludes that Starbucks' policy to exclude assistant store managers from the tip pool "is not contrary to Labor Law § 196-d" (*id.*). This determination must rest on the majority's conclusion that assistant store managers have the type of meaningful authority or control over subordinates making this class of employees ineligible to participate in the tip pool. If that is the majority's conclusion, then it does not matter what, if any, discretionary authority the employer may have under section 196-d to exclude an otherwise eligible employee. Put otherwise, the majority's suggestion that

assistant store managers are employer's agents ineligible to participate in a tip pool renders unnecessary its further consideration of the second certified question.

If that is not the logical import of the majority's assessment of the Starbucks policy in *Winans*, then at a minimum, the majority leaves too much unsaid about the boundaries potentially applicable here. As the Department of Labor notes, there remain crucial factual issues that weigh in favor of declining this question.* As it currently stands, the record indicates that all four classes of Starbucks employees are garbed in similar uniforms and engaged in customer service duties. Thus, whether the customer service responsibilities of an assistant store manager constitute a principal or regular part of his or her duties remains unresolved, and the propriety of Starbucks' tipping policy turns on factual issues pertaining to the appropriate classification of assistant store managers as either employer's agents, or tip-eligible employees.

I believe the more prudent course is for us to allow the Second Circuit to consider the possible applicability of our answer to the first certified question to the *Winans* case, and to decline to answer the second certified question. Given that the federal courts may resolve the case without reference to our answer, and because the majority's resolution of the second question raises, without addressing, certain undefined parameters of the statute, I join in the majority's answer to the first certified question and dissent from its answer to the second (*see Yesil v Reno*, 92 NY2d 455, 456-457 [1998]; *Retail Software Servs. v Lashlee*, 71 NY2d 788 [1988]).

Chief Judge LIPPMAN and Judges READ, PIGOTT and ABDUS-SALAAM concur with Judge GRAFFEO; Judge SMITH dissents in part in an opinion; Judge RIVERA dissents in part in a separate opinion.

Following certification of questions by the United States Court of Appeals for the Second Circuit and acceptance of the questions by this Court pursuant to section 500.27 of the Rules of Practice of the New York State Court of Appeals, and after hear-

---

* If we were to be presented with this question in the future, we would also benefit from more extensive briefing by the Department of Labor based upon a fully developed factual record (*see Samiento v World Yacht Inc.*, 10 NY3d 70, 79 [2008]; *Matter of Chesterfield Assoc. v New York State Dept. of Labor*, 4 NY3d 597, 604 [2005]).

ing argument by counsel for the parties and consideration of the briefs and the record submitted, certified questions answered in accordance with the opinion herein.