*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:   April 16, 2015                 519470
_____

In the Matter of NICOLA
    MARZOVILLA et al.,
                    Petitioners,

            v                                MEMORANDUM AND JUDGMENT

NEW YORK STATE INDUSTRIAL
    BOARD OF APPEALS et al.,
                    Respondents.
_____

Calendar Date:   February 9, 2015

Before:   Lahtinen, J.P., McCarthy, Egan Jr. and Clark, JJ.

                        _____


        Office of Daniel Silverman, LLP, New York City (Daniel
Silverman of counsel), for petitioners.

        Eric T. Schneiderman, Attorney General, New York City (C.
Michael Higgins of counsel), for respondents.

                        _____


Lahtinen, J.P.

        Proceeding pursuant to CPLR article 78 (transferred to this
Court by order of the Supreme Court, entered in Albany County) to
review a determination of respondent Industrial Board of Appeals
which found that petitioners violated Labor Law § 196-d by
misappropriating tips.

        Petitioner Nicola Marzovilla is the owner of petitioner
Valodome, Inc., which, during the time period at issue here,
owned and operated an Italian restaurant in New York City known
as iTrulli.  Tips at iTrulli were subject to mandatory "tip
pooling" (12 NYCRR 146-2.16 [b]), with each waiter receiving a
full share, and busboys, runners, the wine steward and head

waiter receiving a half share.  This proceeding centers on petitioners' challenge to a finding by respondent Industrial Board of Appeals (hereinafter IBA) that from January 2001 to September 2005 petitioners misappropriated the tips, in violation of Labor Law § 196-d, by distributing them to Gianni Linardic and Alex Steidl, senior employees of iTrulli and described by Marzovilla as the head waiter and wine steward, respectively.

Several servers filed complaints in 2006 alleging that portions of iTrulli's tip pool were misappropriated by Marzovilla and paid to Linardic and Steidl.  The Department of Labor (hereinafter DOL) ultimately found that petitioners owed approximately $221,000 for misappropriated tips, plus interest and a civil penalty, for a total of approximately $407,000 and issued an order to comply.  Following a hearing, the IBA modified that wage order to reflect the correct date that the improper tip distribution ceased and suspended interest for a five-month period due to unreasonable delay attributable to DOL, and otherwise affirmed.  Petitioners then commenced this proceeding.

We confirm.  The governing statute, Labor Law § 196-d, provides that "[n]o employer or his [or her] agent . . . shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee. . . .  Nothing in this subdivision shall be construed as affecting . . . the sharing of tips by a waiter with a busboy or similar employee."  Recently, the Court of Appeals clarified that eligibility to participate in a tip pool "'shall be based upon duties and not titles'" (Barenboim v Starbucks Corp., 21 NY3d 460, 471 [2013], quoting 12 NYCRR 146-2.14 [e]), and the Court held that "employer-mandated tip splitting should be limited to employees who, like waiters and busboys, are ordinarily engaged in personal customer service, a rule that comports with the 'expectation[s] of the reasonable customer'" (Barenboim v Starbucks Corp., 21 NY3d at 471-472, quoting Samiento v World Yacht Inc., 10 NY3d 70, 79 [2008]; see 12 NYCRR 146-2.16 [b]; 146-3.4 [a]).  Consistent with longstanding DOL policy, the Court further observed that "employees who regularly provide direct service to patrons remain tip-pool eligible even if they exercise a limited degree of supervisory responsibility"

(Barenboim v Starbucks Corp., 21 NY3d at 472).  The Court concluded, however, "that there comes a point at which the degree of managerial responsibility becomes so substantial that the individual can no longer fairly be characterized as an employee similar to general wait staff within the meaning of Labor Law § 196-d" (id. at 473).  The Court determined that "the line should be drawn at meaningful or significant authority or control over subordinates" (id.).  The Court explained that "[m]eaningful authority might include the ability to discipline subordinates, assist in performance evaluations or participate in the process of hiring or terminating employees, as well as having input in the creation of employee work schedules, thereby directly influencing the number and timing of hours worked by staff as well as their compensation" (id.).

Here, the IBA's determination is supported by the testimony of waiters that, despite their complaints, Linardic sometimes told them that they had to give him a full share of the tip pool when a large amount of money had been collected.  Two waiters, Alex Burgos and Enrique Arias, further explained that, when he served customers, Linardic received personal tips that were not shared with any other waiters.  This testimony was credited by the IBA and is sufficient under Barenboim v Starbucks Corp. (supra) to establish meaningful authority because it established that Linardic "directly influenc[ed] . . . the[] compensation" received by other waiters, in addition to his own (id. at 473).  In addition, seven servers claimed that Linardic was a manager who gave orders, supervised and instructed them while they were working, and two servers indicated that he introduced himself as a manager.  Linardic also extensively "participate[d] in the process of hiring . . . employees" (id.) and had input in the creation of employee work schedules.  While petitioners assert that Linardic was required to check with Marzovilla to see if jobs were open before interviewing an employee, and petitioners' witnesses testified that either Marzovilla or his sister had final authority to make hiring decisions, the Court of Appeals emphasized in Barenboim that "final authority" is not the standard, and that "the power to hire and fire is not the exclusive test" (id.).  Given the foregoing, the IBA properly concluded that Linardic exercised "meaningful authority" over other servers under the test set forth in Barenboim, and

testimony to the contrary presented a credibility issue for the IBA to resolve (see Matter of Garcia v Heady, 46 AD3d 1088, 1090 [2007], lv denied 10 NY3d 705 [2008]).

The IBA's determination that Steidl was ineligible to participate in the tip pool was based on its conclusion that Steidl was not a food service worker in the first instance and his personal service to patrons was not a principal and regular part of his duties (see 12 NYCRR 146-2.14 [e]; 146-2.16 [b]).  As the IBA noted, Steidl's own description of his job revealed that much of his work involved initially programming — and then maintaining and improving — the restaurant's computer system, as well as maintaining and updating the restaurant's massive wine list and wine cellar.  Moreover, the IBA credited the testimony of servers that Steidl was rarely on the floor during lunch shifts and, during dinner, his service duties were limited — he sometimes discussed wine with customers, but rarely opened and poured wine unless the bottle was expensive or the customer was high-profile or a regular.  While Steidl did testify that he was employed primarily as a service worker and the majority of his time was spent on the floor during dinner shifts helping customers with the extensive wine list, and inasmuch as the resolution of conflicting evidence and credibility questions is within the sole province of the IBA (see Matter of Garcia v Heady, 46 AD3d at 1090; see also Matter of CNP Mech., Inc. v Angello, 31 AD3d 925, 927 n [2006], lv denied 8 NY3d 802 [2007]), substantial evidence supports the determination that Steidl's service duties were occasional or incidental to his functions at the restaurant and, thus, he was not a food service worker "whose personal service to patrons [was] a principal or regular part of his . . . duties" (Barenboim v Starbucks Corp., 21 NY3d at 473).

Petitioners' remaining arguments do not require extended discussion.  Contrary to petitioners' assertion, "DOL is obligated to impose interest at the statutory rate" (Matter of Garcia v Heady, 46 AD3d at 1090; see Matter of Marchionda v Industrial Bd. of Appeals of State of N.Y., Dept. of Labor, 119 AD3d 1342, 1343 [2014]; see also Matter of CNP Mech., Inc. v Angello, 31 AD3d at 928).  With respect to their contention that interest should be suspended for certain additional periods, petitioners have not met their burden of making "a showing of

unreasonable delay" on the part of DOL (<u>Matter of Pascazi v Gardner</u>, 106 AD3d 1143, 1145 [2013], <u>appeal dismissed</u> 21 NY3d 1057 [2013], <u>lv denied</u> 22 NY3d 857 [2013]).  Finally, the civil penalty of 25% of wages due was not "so disproportionate to the underlying offense as to be shocking to one's sense of fairness" (<u>Matter of Garcia v Heady</u>, 46 AD3d at 1090 [internal quotation marks and citation omitted]), given the existence of a previous violation, the size of the employer and the gravity of the violation.

Petitioners' remaining argument is not properly before us.

McCarthy, Egan Jr. and Clark, JJ., concur.


ADJUDGED that the determination is confirmed, without costs, and petition dismissed.




ENTER:


Robert D. Mayberger
Clerk of the Court