**Jason SCHEAR, Eduard Stanciu, Bareket Drori, Stella Kim, Dana Beierle, Michael Martinez and Odin Redd, on behalf of themselves and others similarly situated, Plaintiffs,**

v.

**FOOD SCOPE AMERICA, INC. d/b/a Megu Tribeca, Masahiro Origuchi, Koichi Yokoyama and Salvatore Picardi, Defendants.**

No. 12 Civ. 594 (AT).

United States District Court, S.D. New York.

Jan. 10, 2014.

Daniel Maimon Kirschenbaum, Yosef Nussbaum, Charles Edward Joseph, Joseph, Herzfeld, Hester, & Kirschenbaum, Douglas Weiner, Epstein Becker & Green, P.C., New York, NY, for Plaintiffs.

Andrew Paul Marks, Littler Mendelson, P.C., Gerald Thomas Hathaway, Mitchell Silberberg & Knupp LLP, Adam Colon, Naveen Kabir, Littler Mendelson, P.C., New York, NY, for Defendants.

## *MEMORANDUM AND ORDER*

ANALISA TORRES, District Judge:

In this action, Plaintiffs allege that Defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq.* and § 196–d. Specifically, Plaintiffs al-

lege that Defendants: (1) wrongly included non-service employees in a tip pool in violation of the FLSA and NYLL; and (2) failed to pay overtime as required by the FLSA and NYLL. Plaintiffs move for conditional collective certification under 29 U.S.C. § 216(b) and class certification under Federal Rule of Civil Procedure 23. Food Scope America, Inc. d/b/a Megu Tribeca, Masahiro Origuchi, Koichi Yokoyama, and Salvatore Picardi (the "Defendants") move for summary judgment under Federal Rule of Civil Procedure 56. For the reasons stated below, Plaintiffs' motion for conditional collective and class certification is GRANTED and Defendants' motion for summary judgment is GRANTED in part and DENIED in part.

## BACKGROUND

In this FLSA and NYLL action, Plaintiffs, seven restaurant workers, allege that their former employer, Food Scope New York, LLC d/b/a Megu Tribeca ("Megu"), a sushi restaurant, violated federal and state minimum wage, overtime, and tipping laws. The complaint incorrectly names as a defendant Food Scope America, Inc. d/b/a Megu Tribeca. Megu Tribeca is operated by Food Scope New York, LLC. Food Scope America, Inc. is the sole member of Food Scope New York, LLC. Def. Mem. Sum. Judg. 1 n. 1. Plaintiffs are granted leave to amend their pleadings to reflect the accurate party being sued. *See Darby v. Compagnie Nat. Air France*, 132 F.R.D. 354, 355 (S.D.N.Y.1990).

Megu is an upscale sushi restaurant located in New York City's Tribeca neighborhood, and in 2012, it was one of only two restaurants in the city to be awarded the Six Star Diamond Award from the American Academy of Hospitality Sciences. Yokoyama Decl. ¶ 2. At all times material to this action, Megu has had a tip sharing policy that combined all of the tips received during the employees' shifts and distributed them on a point system. *Id.* at ¶ 9. The points awarded per position have changed slightly over time, but generally captains are credited with 100 points, servers and bartenders between 60 and 80 points, runners 60 points, bussers 50 points, sushi team between 55 and 80 points, sommeliers 80 points, hosts 30 points, and

the maître d 80 points. *Id.* at ¶ 10. On a typical night, after all of the tips have been totaled and divided, the value of one point is about $2.75. *Id.* at ¶ 12.

This action challenges the propriety of certain employees' inclusion in the tip pool. Plaintiffs, who filed this action on behalf of all captains, servers, bussers, runners, bartenders, and barbacks (the "tip eligible employees"), contend that non-service employees were unlawfully included in the tip pool, resulting in Plaintiffs receiving fewer tips than they deserved. There is no dispute that sushi chefs, stockers, and expediters were included in the tip pool. Yokoyama Dep. 43:12–17, 43:25–44:12, 44:17–18, Apr. 18, 2013; Yokoyama Decl. ¶ 21. However, the parties dispute whether the sushi chefs, stockers, and expediters engaged in sufficient direct customer contact to qualify for inclusion in the tip pool under the FLSA and NYLL. Defendants contend that the sushi chefs discussed sushi with customers sitting at the sushi bar, served them directly, offered them complimentary items, and engaged in other direct customer interactions. Def. 56.1 ¶¶ 45–50. Defendants also contend that the stockers and expediters had direct customer contact, arguing that they performed the same duties as bussers (clearing tables) and runners (bringing orders from the kitchen to the tables), respectively, but with added responsibilities. *Id.* at ¶¶ 58, 60–63, 67. It is undisputed that the same people who acted as bussers acted as stockers, and at least some of the same people who acted as runners acted as expediters. Pl. 56.1 ¶¶ 59, 63.

Plaintiffs assert that the sushi chefs had *de minimis* customer interaction because customers rarely sat at the sushi bar, and even when they did, the sushi chefs did not speak with them, did not take orders from them, and did not serve them personally. Pl. 56.1 ¶¶ 45–50. Plaintiffs also reject Defendants' characterization of the "stocker/busser" and "expeditor/runner" positions, asserting that stockers and expediters held distinct positions from bussers and runners, respectively, and stockers and expediters had no customer interaction. *Id.* at ¶¶ 58–72. They allege the stockers were only responsible for cleaning

and polishing glasses and silverware and re-stocking them in the bar and silverware cabinets. *Id.* at ¶ 61. Expeditors, according to Plaintiffs, were only responsible for ensuring orders were correct, plated properly, and at the right temperature. *Id.* at ¶ 67. Employees serving in both positions were allegedly confined to the kitchen. *Id.* at ¶¶ 60, 70.

In addition to daily dining service, Megu hosts private parties. Def. & Pl. 56.1 ¶¶ 73. It is undisputed that an event coordinator books the private parties at Megu, works with the party host to plan the menu, arranges for decorative or presentation requirements, and meets other special needs. *Id.* at ¶¶ 74. The event coordinator is Megu's contact person for the host of the private parties. *Id.* at ¶¶ 75. The event coordinator does not participate in the tip pool referenced above. Def. 56.1 ¶ 79. However, Megu adds a mandatory service charge to event contracts and, for a period of time, gave the event coordinator a portion of that service charge. Yokoyama Decl. ¶ 23. What is disputed is the event coordinators' level of interaction with the host and guests during the private parties. Defendants maintain that the event coordinator greeted guests, interacted with the host throughout the parties, and helped the host order wines and food. Def. 56.1 ¶¶ 76–77. Plaintiffs assert that after booking an event, event coordinators frequently did not attend the party or were busy with other duties, so they did not interact with customers. Pl. 56.1 ¶¶ 76–77.

As of 2010, Masahiro Origuchi is the chair of Food Scope America, Inc.'s board of directors. Def. 56.1 ¶ 28. He appointed Koichi Yokoyama as President of Food Scope America, Inc. Origuchi Dep. 26:5–6, May 21, 2013. Yokoyama is responsible for managing Megu (Def. 56.1 ¶ 33), and Origuchi views his role as supervising Yokoyama. Origuchi Dep. 24:25–25:2, May 21, 2013. Salvatore Picardi, the front of the house manager, was responsible for Plaintiffs' hiring, firing, training, and scheduling. Def. 56.1 ¶¶ 36, 37.

## CONDITIONAL COLLECTIVE AND CLASS CERTIFICATION

### I. *FLSA 216(b) Conditional Collective Certification*

▆▆ The FLSA authorizes a plaintiff to file suit on behalf of "other employees similarly situated," but only if such employees "consent in writing." 29 U.S.C. § 216(b). Thus, putative class members must "opt-in" to participate in a FLSA collective action. The FLSA does not guarantee an initiating plaintiff a right to obtain a court-ordered notice to potential opt-ins. Rather, district courts have discretion to implement § 216(b) by facilitating notice. *Myers v. Hertz Corp.,* 624 F.3d 537, 554 (2d Cir.2010). Courts in this Circuit use a two-step method in assessing whether to certify a collection action. *Id.* at 554–55. At the first stage, plaintiffs must "make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Id.* at 555 (citation omitted). Once a plaintiff meets this standard,[1] the court may authorize the plaintiff to send out notices to potential opt-in plaintiffs who may be "similarly situated" to the named plaintiffs with respect to the FLSA violation alleged. *Id.* "Conditional class certification is appropriate ... where all putative class members are employees of the same restaurant enterprise and allege the same types of FLSA violations." *Fasanelli v. Heartland Brewery, Inc.,* 516 F.Supp.2d 317, 322 (S.D.N.Y.2007).

▆▆ "At the second stage, the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs. The action may be 'de-certified' if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice." *Myers,* 624 F.3d at 555 (citation omitted).

---

**1.** Although Defendants argue that a higher standard of proof is required for conditional certification after extensive discovery has been completed, "[t]he heightened scrutiny standard is only appropriate after the opt-in period has ended and the court is able to examine whether the *actual* plaintiffs brought into the case are similarly situated." *Gortat v. Capala Bros., Inc.,* No. 07 Civ. 3629, 2010 WL 1423018, at *10 (E.D.N.Y. Apr. 9, 2010) (citations omitted).

■ Plaintiffs' proposed collective members include persons employed as captains, servers, bussers, runners, bartenders, and/or barbacks at Megu presently or during the past three years. Nussbaum Decl. Ex. 6. Plaintiffs contend that they have easily met the lenient standard for certification and notice because they have submitted declarations demonstrating that Defendants improperly included non-service employees in the tip pool. Defendants argue a conflict exists among some of the putative collective members, namely, the stockers and expediters. The stocker position is a subset of the busser department and is an assignment rotated among the bussers. Pl. 56.1 ¶ 59. Similarly, the expeditor position is a subset of the runner department and is an assignment rotated among the runners on various days. *Id.* at ¶ 63. Defendants assert that this overlap presents a conflict for Plaintiffs, which prevents conditional certification. Plaintiffs argue that this does not present a conflict, but state that:

> [I]f the Court finds there is a potential conflict, Plaintiffs are willing to narrow the scope of the class to not include any current bussers and runners and seek to certify a class that does not include bussers and runners who are currently employed at Megu. This proposed class will include only current and former servers, captains, bartenders, and barbacks, as well as all *former* bussers and runners employed at Megu within the six years from the filing of this lawsuit. None of these class members are susceptible to alleged conflict since they have no interest in participating in Megu's tip pool as an expeditor or stocker. Accordingly, there is also no issue with Plaintiffs [sic] adequacy to act as class representatives. (In the event the Court narrows the scope of the class, the proposed notice will be revised accordingly.)

Pl. Reply Mem. Class Cert. 10. In *Gillian v. Starjem Rest. Corp.*, No. 10 Civ. 6056, 2011 WL 4639842, at *6–7 (S.D.N.Y. Oct. 4, 2011), the court found that the plaintiffs were not "similarly situated" with some of the putative class because they sought relief that would adversely affect some of the individuals they purported to represent:

> For example, plaintiffs allege that stockers and expediters do not participate in service and thus are not entitled to participate in the tip pool. However, since the stocker position is rotated among busboys and since the expediter position is rotated among runners, plaintiffs cannot fairly represent busboys and runners, because busboys and runners also serve as stockers and expediters and thus have an interest in their participation in the tip pool being validated.

This Court is presented with the same factual scenario as in *Gillian*. This Court, like the court in *Gillian*, finds that there is a conflict with Plaintiffs representing Megu's current bussers and runners, as they have an interest in their participation in the tip pool (when serving as stockers and expediters, respectively) being validated.

■ Plaintiffs assert that they can still represent all former bussers and runners employed at Megu within the six years from the filing of this lawsuit because they are not susceptible to the conflict as they no longer have any interest in participating in Megu's tip pool as an expediter or stocker. Plaintiffs' assertion requires further analysis. Plaintiffs' statement assumes that Defendants will be liable for the alleged improperly distributed tips (and that there will not be a redistribution of money from the chefs, expediters, and stockers to the tip eligible employees).[2] This assumption is warranted, as employers are required to compensate tip eligible employees for unlawful deductions caused by the inclusion of tip ineligible employees in tip pools. *See Wicaksono v. XYZ 48 Corp.*, No. 10 Civ. 3635, 2011 WL 2022644, at *5 (S.D.N.Y. May 2, 2011); *Cao v. Wu Liang Ye Lexington Rest., Inc.*, No. 08 Civ. 3725, 2010 WL 4159391, at *4 (S.D.N.Y. Sept. 30, 2010).

Plaintiffs' statement also assumes that Defendants could not recover from the former

---

**2.** Plaintiffs make this assumption despite contrary language in other parts of their brief: "Thus, to calculate ['tip disgorgement'] damages, the total amount distributed to the tip ineligible employees could be tallied and *redistributed,* based on Defendants' point system, to the individuals who were lawfully in the tip pool." Pl. Reply Mem. Class Cert. 8 (emphasis added).

stockers (bussers) and expediters (runners) money that they received as a part of the improper tip distribution. This assumption also appears to be warranted. *See Copantitla v. Fiskardo Estiatorio, Inc.,* 788 F.Supp.2d 253, 280–82 (S.D.N.Y.2011). In *Copantitla,* the defendants argued that the plaintiffs' counsel had a conflict of interest because if the bus boys and waiters (the tip eligible employees) prevailed, then the polishers and managers (the tip ineligible employees who were included in the tip pool) would be exposed to liability. *Id.* at 280–81. Indeed, the defendants had asserted counterclaims seeking to recover the tips paid to polishers and managers as a set-off to any award of damages. *Id.*

However, the court found no conflict existed because the defendants were unable to cite any cases supporting the proposition that an employer may recover from its employees money that the employees received as a result of an improper tip distribution. *Id.* at 281–82. The court also rejected the defendants' claims of money had and received and unjust enrichment against the polishers and managers. *Id.* at 282. The money had and received claim failed because the court found that disgorging tips from employees "who did nothing but receive the money [their] employer paid [them]," did not satisfy the claim's third element: "under principles of equity and good conscience, the defendant should not be permitted to keep the money." *Id.* at 282 (citation and internal quotation marks omitted). Secondly, the first element, "the defendant received money belonging to [the] plaintiff," was absent, as the money did not belong to the restaurant, but instead to the tip eligible employees. *Id.* (alteration in original) (citation and internal quotation marks omitted). The court rejected the unjust enrichment claim on similar reasoning, stating that unjust enrichment is "based on the equitable principles that a person shall not be allowed to enrich himself unjustly at the expense of another," and the tip ineligible employees were enriched, "at the expense of the other employees, not [the defendant]." *Id.* (footnote omitted) (citation and internal quotation marks omitted).

Because Defendants, like the defendants in *Copantitla,* appear to have no means of recovering the tips given to Megu's former bussers and runners (while serving as stockers and expediters, respectively), no conflict of interest exists. The Court finds that the former bussers and runners, along with all of the other tip eligible employees, are "similarly situated" for purposes of conditional class certification.[3] Plaintiffs have submitted ample evidence alleging that Defendants included non-service employees in Megu's tip pool in violation of the FLSA. *See Fasanelli,* 516 F.Supp.2d at 322.

Accordingly, Plaintiffs' motion for conditional collective certification is GRANTED.

## II. *Fed.R.Civ.P. 23 Class Certification of the NYLL Claims*

For a matter to proceed as a class action, a plaintiff must satisfy the following prerequisites: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a). In addition, plaintiffs who seek to proceed under Rule 23(b) must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

Although the Court must resolve factual disputes relevant to satisfying each Rule 23 requirement, "[t]he certifying court should not make any factual findings or merits determinations that are not necessary to the Rule 23 analysis, and any factual determinations made at the certification stage are not binding on a subsequent fact-finder, even the certifying court." *Flores v. Anjost Corp.,* 284 F.R.D. 112, 122 (S.D.N.Y.2012) (citing *In re Initial Pub. Offerings Sec. Litig.,* 471 F.3d

---

**3.** Plaintiffs must therefore narrow the scope of the collective members to not include any current bussers and runners and revise the proposed notice accordingly, discussed *infra.*

24, 41 (2d Cir.2006)). The party seeking class certification bears the burden of satisfying the requirements of Rule 23 by a preponderance of the evidence. *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir.2008).

#### a. *Numerosity—Rule 23(a)(1)*

 Under Rule 23(a)(1) numerosity is presumed where a putative class has 40 or more members. *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir.2011). Here, sample payroll documents produced by Defendants show "that at certain periods of time during the liability period there were 40 or more tipped employees participating in the tip pool at Megu." Nussbaum Decl. ¶ 22, May 20, 2013. The documents also reflect that "at least 100 different tipped employees participated in Megu Tribeca's tip pool throughout the liability period." *Id.* at ¶ 23. Numerosity, therefore, is satisfied.

#### b. *Commonality—Rule 23(a)(2)*

 "The commonality requirement is met if plaintiffs' grievances share a common question of law or fact." *Robinson v. Metro–North Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir.2001) (citation and internal quotation marks omitted). Plaintiffs identify nine questions common to the class, including: whether Defendants employed the class members under New York law; what are/were the policies, practices, and procedures regarding the handling and distribution of gratuities received by the class members; whether Defendants illegally required class members to distribute a portion of their tips to non-service employees; whether employees acting as "sushi chefs," "expediters," "stockers," and "event planners" were legally permitted to receive a portion of the gratuity received by class members; and what are/were the policies, practices, and procedures of Defendants regarding the taking of the tip credit for purposes of the minimum and overtime wages paid to class members. Pl. Mem. Class Cert. 14–15.

 The harm that the named Plaintiffs have allegedly suffered in this case is the same harm suffered by each class member.

And, the claims depend upon a common contention, namely, that the sushi chefs, expediters, and stockers are not eligible for inclusion in the tip pool under the NYLL. This contention is "capable of classwide resolution" as its "truth or falsity will resolve [the] issue ... in one stroke." *Wal–Mart Stores, Inc. v. Dukes*, —— U.S. ——, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011). Therefore, Plaintiffs have satisfied the commonality requirement. *See Shahriar*, 659 F.3d at 252 (commonality is satisfied where plaintiffs established that restaurant workers were subject to the same tipping policies).

#### c. *Typicality—Rule 23(a)(3)*

 "Typicality requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 275 F.R.D. 193, 199 (S.D.N.Y.2011) (citation and internal quotation marks omitted). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir.1993) (citations omitted). "As long as plaintiffs assert ... that defendants committed the same wrongful acts in the same manner against all members of the class, they establish necessary typicality." *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 155 (S.D.N.Y.2002) (citations and internal quotation marks omitted).

 In this case, the alleged violations suffered by Plaintiffs are typical of those of the class they seek to represent, namely that Defendants failed to properly distribute their tips in accordance with the NYLL. All members were employed by Defendants as tipped, front of house employees (servers, bussers, runners, etc.) In the course of their employment, Plaintiffs and putative class members were all allegedly denied gratuities

that they were entitled to receive because they were all required to share their gratuities with the same tip ineligible employees. Therefore, Plaintiffs have satisfied the typicality requirement. *See Shahriar*, 659 F.3d at 252 (finding typicality satisfied where "all [c]lass [m]embers were subject to the same tipping policies"); *Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 337 (S.D.N.Y.2010) (finding commonality and typicality satisfied where all class members were subject to the same policies regarding their employers' distribution of a service charge).

### d. *Adequacy—Rule 23(a)(4)*

 Rule 23(a)(4) requires that class representatives "will fairly and adequately protect the interests of the class." Fed. R.Civ.P. 23(a)(4). Where the "class representatives are prepared to prosecute fully the action and have no known conflicts with any class member," the adequacy requirements are met. *Shahriar*, 659 F.3d at 253. Here, the named Plaintiffs are fully prepared to act as class representatives, prosecute the case, have no conflict with any class members,[4] and will fairly and adequately protect the interests of the class. Nussbaum Decl. ¶¶ 9, 10, May 20, 2013. Accordingly, adequacy of the representatives is established.

### e. *Rule 23(a)'s "Implied" Requirement*

 Although it is "not explicitly spelled out in Rule 23, courts have added an 'implied requirement of ascertainability' with respect to the class definition." *Hamelin v. Faxton–St. Luke's Healthcare*, 274 F.R.D. 385, 393 (N.D.N.Y.2011) (citation omitted). Specifically, courts have required that "a class be identifiable before it may be properly certified." *Id.* at 396 (citing *Dunnigan v. Metro. Life. Ins. Co.*, 214 F.R.D. 125, 135 (S.D.N.Y.2003)). "An identifiable class exists if its members can be ascertained by reference to objective criteria." *Stinson v. City of New York*, 282 F.R.D. 360, 367 (S.D.N.Y. 2012) (citation omitted). Here, the proposed class is easily identifiable from Defendants' records: all of the tip eligible employees who worked at Megu throughout the class period.

### f. *Predominance—Rule 23(b)(3)*

 In addition to satisfying the Rule 23(a) prerequisites, a class proponent must qualify the proposed class under one of the three subsection 23(b) categories. *Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir.2010). Rule 23(b)(3), the provision that Plaintiffs move under here, is appropriate in cases in which common legal or factual issues predominate over individual issues and where a class action is superior to other methods of adjudication. Fed.R.Civ.P. 23(b)(3). Plaintiffs argue that class issues predominate over individualized issues because if Plaintiffs are successful in establishing that the alleged tip ineligible employees were wrongly included in the tip pool, then all class members will have a common claim under NYLL § 196–d.

 Defendants argue that class issues do not predominate over individual issues because under the NYLL, there is a distinction between tip pooling and tip sharing, and whether Plaintiffs consented to the tip pool (creating a voluntary tip pooling arrangement) is an individualized question that destroys predominance, citing N.Y. Dept. of Labor Opinion Letter RO–08–0049. Defendants' argument is unavailing. For a voluntary "tip pooling" arrangement to exist, it must be "undertaken by employees on a completely voluntary basis and may not be mandated or initiated by employers" and an employer can take "no part in the organization or the conduct of [the] tip-pool." *Id.* For the purposes of this certification motion, the Court finds that Plaintiffs did not maintain a voluntary "tip pool" within the meaning of N.Y. Dept. of Labor Opinion Letter RO–08– 0049. Defendants' documents indicate that they had a heavy hand in facilitating the tip sharing arrangement. *See* Nussbaum Decl. Ex. W (MEGU 17855) (e-mail from Origuchi to Yokoyama managing the point system used to distribute the tips amongst employees).

Defendants also assert that Plaintiffs cannot demonstrate that individual damages can be measured on a classwide basis with common proof. *See Comcast Corp. v. Behrend*, —— U.S. ——, 133 S.Ct. 1426, 185 L.Ed.2d

---

4. This assumes current bussers and runners will

be excluded from the class, as discussed *supra*.

515 (2013). Defendants argue that the Court would have to review in "painstaking detail," the hours and shifts worked by each tip eligible employee and tip ineligible employee to determine the amount of tips owed and calculate how to redistribute the tips based on Defendants' point system. Def. Mem. Class Cert. 18–19. However, the Second Circuit has found that individualized calculations of damages do not defeat the predominance requirement. *See In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 123 n. 8 (2d Cir.2013). *See also Morris v. Alle Processing Corp.*, No. 08 Civ. 4874, 2013 WL 1880919, at *11 (E.D.N.Y. May 6, 2013) (citations omitted) ("Although, the spread of hours compensation to which an individual is entitled will require an inquiry into the number of hours the individual worked and his rate of pay, such damages-related inquiries are 'mechanical' and do 'not threaten to overwhelm the litigation with individual factual determinations'"); *In re U.S. Foodservice Inc. Pricing Litig.*, No. 06 Civ. 1657, 2011 WL 6013551, at *16 (D.Conn. Nov. 29, 2011), *aff'd*, 729 F.3d 108 (2d Cir.2013) (citation omitted) ("It is a rare case where computation of each individual's damages is so complex, fact-specific, and difficult that the burden on the court is intolerable."). So long as a plaintiff's proposed measure of damages is directly linked with her theory of the defendants' liability and is capable of measurement on a classwide basis, compliance with *Comcast* is met. *See In re U.S. Foodservice*, 729 F.3d at 123 n. 8.

Here, if the putative class members prove Defendants' liability, damages will be calculated based on the tips each employee lost due to Defendants' unlawful tip pool. Thus, unlike in *Comcast*, Plaintiffs' proposed measure of damages is directly linked with their theory of Defendants' liability. Damages are also capable of measurement on a classwide basis. Plaintiffs correctly contend that calculating the "tip disgorgement damages" (the tips that were allegedly unlawfully retained and distributed by Megu) is a straightforward, mechanical process: "The payroll records of individuals who unlawfully received tips state the precise amount of tips these individuals received each week. Thus, to calculate these damages, the total amount distributed to the tip ineligible employees could be tallied and redistributed, based on Defendants' point system, to the individuals who were lawfully in the tip pool." Pl. Reply Mem. Class Cert. 8. *See also* Marks Decl. Ex. F. Indeed, far from being a "painstaking endeavor," the damages could be "mechanically calculated with relative ease, particularly in light of modern software technology, such as Microsoft Excel." Pl. Reply Mem. Class Cert. 1.

Here, class issues predominate over individualized issues because "[i]f Plaintiffs succeed in showing that the [alleged tip ineligible employees] were not eligible to receive tips under New York law, then each of the class plaintiffs will likely prevail on his or her section 196–d claims." *Shahriar*, 659 F.3d at 253. Thus, predominance is satisfied.

### g. *Superiority—Rule 23(b)(3)*

█ The final question to be addressed under Rule 23(b) is whether the "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3). Courts routinely hold that a class action is superior where, as here, potential class members are aggrieved by the same policy, the damages suffered are small in relation to the expense and burden of individual litigation, and many potential class members are currently employed by the defendants. *See, e.g., Trinidad v. Breakaway Courier Sys., Inc.*, No. 05 Civ. 4116, 2007 WL 103073, at *9 (S.D.N.Y. Jan. 12, 2007) (finding class action superior where the average claim was $560 and class members currently worked for the defendant); *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2006 WL 2819730, at *16 (S.D.N.Y. Sept. 29, 2006) (citations omitted) ("Because litigation costs would likely exceed any gains from overtime wage recovery, class members would be unlikely to litigate individually.... In addition, since some class members are still employees of Defendants' [sic], class members may fear reprisal and would not be inclined to pursue individual claims."). Defendants' argument that the differences between federal and state claims will confuse the jury, eliminating any convenience created by trying them together, is

unavailing. Courts routinely try FLSA and NYLL claims together. *See Damassia v. Duane Reade, Inc.,* 250 F.R.D. 152, 164 (S.D.N.Y.2008) (holding FLSA and NYLL class claims should be tried together "because it allows for a more cost-efficient and fair litigation of common disputes"). Therefore, the Court finds class action is superior to other methods of adjudicating Plaintiffs' claims.

Accordingly, Plaintiffs' motion for class certification is GRANTED.

### III. *Appointment of Class Counsel*

Fed.R.Civ.P. 23(g)(1) provides: "Unless a statute provides otherwise, a court that certifies a class must appoint class counsel." Rule 23(g) directs that the Court consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed.R.Civ.P. 23(g). Plaintiffs have retained counsel, Joseph & Kirschenbaum LLP, who has already identified and investigated potential claims in this action. Plaintiffs' counsel is qualified and experienced in class action law and wage and employment litigation. Nussbaum Decl. ¶¶ 11–13, May 20, 2013. Counsel has extensive experience litigating plaintiff class actions as well as New York wage and hour claims. *Id.* at ¶ 17. Counsel is also willing and able to commit the necessary resources to represent the class in this case. *Id.* at ¶ 20.

■■■ Accordingly, the Court finds that Joseph & Kirschenbaum LLP satisfies the requirements of Rule 23(g) and appoints it as class counsel.

### IV. *Notice*

■■■ Plaintiffs have attached a proposed notice to their motion. Nussbaum Decl. Ex. 6. Although FLSA § 216(b) has no provision for issuing notice in a collective action, it is well settled that district courts have the power to authorize a FLSA plaintiff to send such notice to other potential plaintiffs. *See Hoffmann v. Sbarro, Inc.,* 982 F.Supp. 249, 261 (S.D.N.Y.1997) (Sotomayor, J.). "No courts have specifically outlined what form court-authorized notice should take, or what provisions notice issued pursuant to § 216(b) should contain." *Gjurovich v. Emmanuel's Marketplace, Inc.,* 282 F.Supp.2d 101, 105–106 (S.D.N.Y.2003). The United States Supreme Court has abstained from reviewing the contents of a proposed notice under § 216(b), noting that such details should be left to the broad discretion of the trial court. *Hoffmann–La Roche, Inc. v. Sperling,* 493 U.S. 165, 170, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989). "When exercising its broad discretion to craft appropriate notices in individual cases, District Courts consider the overarching policies of the collective suit provisions" and ensure that putative plaintiffs receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Fasanelli,* 516 F.Supp.2d at 323 (citation and internal quotation marks omitted).

For Rule 23(b)(3) classes, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed.R.Civ.P. 23(c)(2)(B). Fed.R.Civ.P. 23(c)(2)(B) requires the notice to "clearly and concisely state in plain, easily understood language:

(i) the nature of the action;

(ii) the definition of the class certified;

(iii) the class claims, issues, or defenses;

(iv) that a class member may enter an appearance through an attorney if the member so desires;

(v) that the court will exclude from the class any member who requests exclusion;

(vi) the time and manner for requesting exclusion; and

(vii) the binding effect of a class judgment on members under Rule 23(c)(3)."

### a. *Dual Notice*

Defendants contend that Plaintiffs' proposed notice, which contains 216(b) opt-in claims and Fed.R.Civ.P. 23 opt-out state law claims, will confuse the putative class members because it will provide information on how to join a part of the lawsuit while also explaining how to back out of another part of the lawsuit. This argument is unavailing, as requiring two different notices for federal and state law claims would likely aggravate the amount of confusion amongst the putative class—not diminish it. *See Shahriar*, 659 F.3d 234, 250 n. 9 (finding there to be an "additional risk of confusion on the part of potential class members who would receive" both FLSA and NYLL notices).

### b. *Modifications*

The Court has reviewed Plaintiffs' proposed notice, and tentatively approves it with the following modifications. First, Plaintiffs shall revise the class to exclude current bussers and runners, for reasons discussed *supra*. Second, on page one, Plaintiffs shall delete, "*A court authorized this Notice.*"[5] Third, Plaintiffs shall replace "Judge Daniels" with "Judge Torres" throughout. Fourth, on page four, under subpart 14, Plaintiffs shall add: "The Court will exclude from the class any member who requests exclusion." Fifth, page two, subpart 3, shall read: "It is Defendants' position that the tip pool is voluntary and run by the employees, and that all of the individuals who receive a distribution from the tip pool engage in customer service."[6]

Defendants argue that the notice should direct opt-in claimants to mail the consent forms to the Court, not Plaintiffs' counsel. Courts are split on this issue. *Ritz v. Mike Rory Corp.*, No. 12 Civ. 367, 2013 WL 1799974, at *5 (E.D.N.Y. Apr. 30, 2013) (directing opt-in forms be returned to plaintiff's counsel to reduce the burden on opt-in plaintiffs and the court); *Hallissey v. Am. Online, Inc.*, No. 99 Civ. 3785, 2008 WL 465112, at *4 (S.D.N.Y. Feb. 19, 2008) (requiring consent forms to be mailed to the Clerk of Court because of concerns that a contrary ruling might discourage opt-in plaintiffs from retaining their own counsel). For the reasons articulated in *Ritz*, the Court directs that the opt-in forms shall be returnable to Plaintiffs' counsel.

The proposed notice does not include a date by which the consent form must be returned. Neither party has proposed a date. "Many courts in this district have set a 60–day period." *Diaz v. S & H Bondi's Dep't Store*, No. 10 Civ. 7676, 2012 WL 137460, at *8 (S.D.N.Y. Jan. 18, 2012) (citations omitted). Accordingly, the notice shall require opt-in plaintiffs to consent to join the action within 60 days of the notice mailing date. The same amount of time should also be set for the opt-out period on page 4, under subpart 14.[7]

The proposed notice contemplates a three year notice period for collective action members,[8] stating: "The collective members consist of captains, servers, bussers, runners, bartenders and barbacks who were employed by Megu Tribeca at any time

---

**5.** The Court finds this language contains a "*certain specter of authority*" which *may imply* "more court sponsorship than appropriate." *Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472, 2012 WL 1193836, at *7 (S.D.N.Y. Apr. 6, 2012).

**6.** This statement was requested by Defendants. *See* Def. Mem. Class Cert. 24.

**7.** This is more than sufficient time to satisfy due process. *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F.Supp.2d 179, 193 (S.D.N.Y.2012) (citations omitted) ("Courts have held that opt out periods of less than 45 days satisfy due process, even where unsophisticated class members must make decisions regarding complex issues of law or fact.")

**8.** The proposed notice contemplates a six year notice period for the NYLL claims. Because any potential plaintiffs whose claim is more than two years old would only have state law claims, the Court would have no subject matter jurisdiction over such claims unless the plaintiffs were diverse and alleged damages in excess of $75,000. *See McBeth v. Gabrielli Truck Sales, Ltd.*, 768 F.Supp.2d 396, 400 (E.D.N.Y.2011). Although there is a trend of limiting the NYLL notice period to the FLSA statute of limitations period in cases where $75,000 in damages seems unlikely, the Court finds that it is possible that diverse plaintiffs who have worked for Megu for five, six or seven years could in good faith allege over $75,000 in damages. *See id.*

from [**three years prior to the entry of the Court's Order**] to the present." Nussbaum Decl. Ex. 6 (bold in original). The FLSA has a two-year statute of limitations except in the case of willful violations, for which the statute of limitations is three years. 29 U.S.C. § 255(a). To establish a willful violation, Plaintiffs must demonstrate that "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988). Typically, where willfulness is disputed, courts apply the three-year statute of limitations for purposes of certifying a representative action. *Hamadou v. Hess Corp.*, 915 F.Supp.2d 651, 668 (S.D.N.Y.2013); *Iglesias–Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 369 (S.D.N.Y.2007). Plaintiffs alleged a willful violation by Defendants in the complaint. Compl. ¶ 31 ("Defendants committed the following alleged acts knowingly, intentionally and willfully."). And, Defendants did not contest the three-year notice period in their opposition papers to class certification. Under such circumstances, the Court would normally approve a three-year notice period. *See Cohen v. Gerson Lehrman Grp., Inc.*, 686 F.Supp.2d 317, 331 (S.D.N.Y.2010).

However, in their motion for summary judgment, Defendants satisfied their initial burden by demonstrating that Plaintiffs could not produce admissible evidence to support a finding of a willful violation, stating: "absent a willful violation (which Plaintiffs cannot demonstrate), Plaintiffs' claims with respect to the impropriety of the inclusion of the expediter in the tip pool are untimely as Plaintiffs commenced this action on January 24, 2012, more than two years after the expediter was removed from the tip pool." Def. Mem. Sum. Judg. 12 n. 19. The burden then shifted to Plaintiffs to establish that a genuine issue of fact exists regarding willfulness. But, Plaintiffs did not address Defendants' assertion, ignoring the issue of willfulness in their opposition altogether. The Court holds, therefore, that there is no genuine issue of material fact as to Defendants' willfulness. Therefore, only a two-year notice period is appropriate for the collective action.

Plaintiffs shall submit a revised copy of the proposed notice for the Court's final review and approval by **January 17, 2014.**

### c. Request to Post Notice

Plaintiffs request that the Court order: "[p]osting of the Notice, along with the consent forms, in the restaurant in a conspicuous place where putative plaintiffs are likely to view it." Pl. Mem. Class Cert. 2. Defendants object, arguing posting notice is not necessary where defendants provide sufficient contact information for potential collective action members. "Courts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail." *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F.Supp.2d 445, 449 (S.D.N.Y.2011) (citations omitted). Thus, Plaintiffs' request is GRANTED.

Plaintiffs also request permission to publish an internet website where "FLSA Covered Employees" may submit a consent to join form electronically. Pl. Mem. Class Cert. 24. Plaintiffs' request is GRANTED.

### V. Production of Putative Class Member Information

Lastly, Plaintiffs request a computer-readable list of all names, last known addresses, alternate addresses, telephone numbers, e-mail addresses, social security numbers, dates of employment, and job titles for all "FLSA Covered Employees and Class Members," so that Plaintiffs may mail and e-mail the notices. Pl. Mem. Class Cert. 23. Courts routinely order discovery of names, addresses, e-mail addresses, and telephone numbers in FLSA actions. *See Hernandez v. Immortal Rise, Inc.*, 2012 WL 4369746, at *9 (E.D.N.Y. Sept. 24, 2012); *Ack v. Manhattan Beer Distribs., Inc.*, No. 11 Civ 5582, 2012 WL 1710985, at *6 (E.D.N.Y. May 15, 2012) (collecting cases).

Although "courts often decline to allow discovery of social security numbers due to privacy concerns, it is generally accepted that such discovery is permitted where

[p]laintiff can demonstrate that names and contact information are insufficient to effectuate notice." *Whitehorn*, 767 F.Supp.2d at 448 (citations omitted). Here, Plaintiffs' counsel asserts that a large percentage of consent forms are typically returned as undeliverable, and the only way to locate these employees is to perform a search by Social Security number. Pl. Mem. Class Cert. 24. In such cases, courts have required plaintiffs' counsel to "provide defendants' counsel with a copy of the notice of undeliverability" and then required "defendants' counsel [to] provide forthwith the social security numbers of each individual who could not be located." *Ritz*, 2013 WL 1799974, at *5. The Court will adopt the same procedure here. As in *Ritz*, Plaintiffs' counsel may request that the opt-in period for such individuals be extended 45 days from the date of receipt of the individual's social security number.

Because of privacy concerns, Plaintiffs shall file a fully executed confidentiality agreement regarding the use of social security numbers by **January 17, 2014**. *See Shajan v. Barolo, Ltd.*, No. 10 Civ 1385, 2010 WL 2218095, at *1 (S.D.N.Y. June 2, 2010). The agreement shall state that the numbers will be maintained by counsel alone and used solely to perform public records searches to locate and provide notice to prospective members; that all copies of the numbers, including any program or other document created using the numbers, will be destroyed once the searches are complete; and that counsel will certify, in writing, that the terms of this order have been adhered to once the destruction of this data is complete. *See Whitehorn*, 767 F.Supp.2d at 448–49 (citing *Shajan*, 2010 WL 2218095, at *1).

Accordingly, it is ORDERED that Defendants shall produce a computer-readable list of all names, last known addresses, alternate addresses, known telephone numbers, known e-mail addresses, social security numbers (where applicable), dates of employment, and job titles for all of "the FLSA Covered Employees and Class Members" by **January 17, 2014**. Plaintiffs' counsel is authorized to send the revised notice (after the Court grants final approval) and opt-in form to all class members by first class mail and e-mail.

Defendants shall post copies of the revised notice and opt-in form at Megu in a location conspicuous to all employees.

## VI. *Equitable Tolling*

Plaintiffs' request for equitable tolling is DENIED. *See Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir.1993) ("Arguments may not be made for the first time in a reply brief.").

## SUMMARY JUDGMENT

### I. *Standard of Review*

Summary judgment may be granted only if the court concludes that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir.2004). A dispute is genuine when there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Material facts are those which may affect the outcome of a case. *Id.*

The moving party initially bears the burden of informing the court of the absence of a genuine dispute of material fact by citing to particulars in the record. Fed.R.Civ.P. 56(c); *Celotex*, 477 U.S. 317 at 322–25, 106 S.Ct. 2548; *Koch v. Town of Brattleboro*, 287 F.3d 162, 165 (2d Cir.2002). The movant may satisfy his burden by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed.R.Civ.P. 56(c)(1)(B). If the non-moving party has the burden of proof on specific issues, the movant may also satisfy his own initial burden by demonstrating that the adverse party cannot produce admissible evidence to support an issue of fact. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548; *PepsiCo Inc. v. Coca–Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002). In deciding the motion, the court views the record in the light most favorable to the non-moving party. *Hunter v. Bryant*, 502 U.S. 224, 233, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991); *O'Hara v. Weeks Marine, Inc.*, 294 F.3d 55, 61 (2d Cir.2002).

If the moving party meets his initial burden, the burden then shifts to the opposing party to establish a genuine issue of fact. *Beard v. Banks,* 548 U.S. 521, 529, 126 S.Ct. 2572, 165 L.Ed.2d 697 (2006); *Santos v. Murdock,* 243 F.3d 681, 683 (2d Cir.2001). The opposing party may not avoid summary judgment by relying solely on conclusory allegations or denials that are unsupported by factual data. Fed.R.Civ.P. 56(c); *Amaker v. Foley,* 274 F.3d 677, 680–81 (2d Cir.2001). Instead, the opposing party must set forth "specific facts showing there is a genuine issue for trial." *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (internal quotation marks omitted). A nonmoving party demonstrates a "genuine issue for trial" by presenting evidence about a material fact, such that a reasonable jury could return a verdict in his favor. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

## II. *Overtime Pay Claims and FLSA Claims for Plaintiffs Fai Lam and Aureliano Riego*

In their motion for summary judgment, Defendants argue that there is no admissible evidence that Plaintiffs were denied overtime pay. Defendants also argue that opt-in Plaintiffs Fai Lam and Aureliano Riego stopped working for Megu over four years prior to joining the lawsuit; thus, their FLSA claims are barred by the statute of limitations. Plaintiffs, in their opposition to summary judgment, state: "Plaintiffs are no longer pursuing their claims that Plaintiffs were denied overtime pay . . . or any claims under the FLSA for Plaintiffs Fai Lam and Aureliano Riego." Pl. Mem. Sum. Judg. 2. Therefore, summary judgment is GRANTED to Defendants on Plaintiffs' overtime pay claims and Plaintiffs Fai Lam's and Aureliano Riego's FLSA claims.

## III. *Tip Eligibility of Sushi Chefs, Stackers, and Expeditors*

■■■ The FLSA requires employers to pay employees a minimum wage, currently $7.25 an hour. 29 U.S.C. § 206. Section 3(m) of the FLSA, 29 U.S.C. § 203(m), allows an employer to pay "tipped employees" an hourly rate less than the federal minimum wage by crediting a portion of the actual amount of tips received by the employee against the required hourly minimum wage. An employer may not avail itself of the tip credit if it requires employees to share their tips with employees who do not regularly and customarily receive tips. 29 U.S.C. § 203(m). Therefore, "an employer loses its entitlement to the tip credit where it requires tipped employees to share tips with (1) employees who do not provide direct customer service or (2) managers." *Shahriar,* 659 F.3d at 240 (citations omitted). "When deciding whether an employee customarily and regularly receives tips, courts must determine whether the employee's job is historically a tipped occupation and whether he has more than '*de minimis*' interaction with customers as a part of his employment." *Chhab v. Darden Restaurants, Inc.,* No. 11 Civ. 8345, 2013 WL 5308004, at *6 (S.D.N.Y. Sept. 20, 2013) (citations omitted).

The NYLL similarly prohibits employers from distributing gratuities to employees who do not perform direct customer service. § 196–d provides:

> No employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee. . . . Nothing in this subdivision shall be construed as affecting . . . the sharing of tips by a waiter with a busboy or *similar employee.*

(emphasis added). The New York Court of Appeals has defined "similar employee" to mean employees who are "ordinarily engaged in personal customer service." *Barenboim v. Starbucks Corp.,* 21 N.Y.3d 460, 471–72, 972 N.Y.S.2d 191, 995 N.E.2d 153 (2013) (citation and internal quotation marks omitted). *See also Shahriar,* 659 F.3d at 240 (finding § 196–d prohibits employers from requiring tipped employees to share tips with non-service employees or managers). Because § 196–d and 29 U.S.C. § 203(m) bar similar kinds of tipping practices, the Court will analyze Defendants' summary judgment motion with respect to Plaintiffs' FLSA and NYLL claims conjunctively. *See id.* at 246

("the FLSA and the NYLL use a similar standard for [determining tip eligible employees]") (citations omitted). Indeed, any differences between the two standards would not be material to the facts of this case.

That portion of Defendants' motion for summary judgment regarding Plaintiffs' FLSA and NYLL claims based on the improper inclusion of the sushi chefs and stockers (and Plaintiffs' NYLL claims regarding the improper inclusion of expediters) in the tip pool, is DENIED. The record is rife with issues of material fact regarding whether those employees had more than a *de minimis* interaction with customers as a part of their employment and/or whether they were ordinarily engaged in personal customer service. *See* 29 U.S.C. § 203(m); NYLL § 196–d. That portion of Defendant's motion for summary judgment regarding Plaintiffs' FLSA claims based on improper inclusion of expediters in the tip pool is GRANTED. The FLSA's statute of limitations is two years, and can be enlarged to up to three years for willful violations. 29 U.S.C. § 255(a). It is undisputed that Megu's "runner/expeditor" did not participate in the tip pool after January 24, 2010 (two years before Plaintiffs commenced this lawsuit). Pl. 56.1 ¶ 72. Plaintiffs have not shown any willful violation. Therefore, the statute of limitations bars the FLSA claims. However, the NYLL's statute of limitation is six years. NYLL § 198(3); NYLL § 663(3). Thus, Plaintiffs' claims regarding the improper inclusion of the "expeditor/runner" under NYLL §§ 650 *et seq.* and § 196–d shall survive.

#### a. *Sushi Chefs*

Genuine issues of material fact exist regarding the sushi chefs' level of customer interaction at Megu. Although Defendants assert Megu's sushi chefs regularly interacted with customers, Plaintiffs maintain that they did not. Def. & Pl. 56.1 ¶¶ 45. Although Defendants assert that customers sitting at the sushi bar ordered food, drinks, and desserts directly from the sushi chefs, Plaintiffs maintain that customers were unable to place orders with sushi chefs. *Id.* at ¶¶ 47. Although Defendants assert sushi

chefs discussed various aspects of sushi with the customers, Plaintiffs maintain that the sushi chefs customarily had no contact with customers. *Id.* at ¶¶ 48. Although Defendants assert that sushi chefs served customers sitting at the sushi bar by reaching over the glass counter and placing prepared sushi dishes on the customer's plate, Plaintiffs maintain that customers seated at the sushi bar were served by servers, captains, and runners. *Id.* at ¶¶ 49. Indeed, the parties cannot even agree on how many seats are available at the sushi bar. *Id.* at ¶¶ 39. Resolution of these issues, and others, must take place at trial.

#### b. *Stockers*

There also exist genuine issues of material fact regarding the stockers' level of customer interaction at Megu. Defendants assert that stockers are bussers with the added responsibility of stocking the glasses and silverware. Def. 56.1 ¶¶ 59–61. Plaintiffs maintain that when bussers are assigned to the stocker position, they remain in that position for their entire shift. Pl. 56.1 ¶ 59. Thus, when in that position, the stockers are confined to the kitchen, responsible only for the cleaning, polishing, and restocking of glasses and silverware. *Id.* at ¶ 60. Therefore, a jury must decide what, if any, customer interaction the stockers have at Megu.

#### c. *Expeditors*

Similar to Defendants' "stocker/busser" theory, Defendants assert that Megu's expeditors interacted directly with customers because they are simply runners with the added responsibility of making sure orders are correct, properly plated, at the right temperature, and distributed in the correct sequence. Def. 56.1 ¶ 63. On the other hand, Plaintiffs maintain that Megu had one employee who worked five days a week exclusively in the kitchen as a full time expediter. Pl. 56.1 ¶ 63. They allege that the expediter never left the kitchen and never served or interacted with customers and that on days that the full-time expediter was not working an individual typically assigned to the runner position was assigned to the expediter position for that entire shift. *Id.* And, like the

full-time expediter, the runner working as an expediter would not leave the kitchen. Martinez Decl. ¶ 16. Indeed, Plaintiffs assert there was no "runner/expediter" role at Megu. Anguiano Decl. ¶ 7. Accordingly, a jury must resolve this issue.

## IV. *Event Coordinators Are Tip Eligible*

■ Megu's event coordinators do not participate in the tip pool discussed above. Def. 56.1 ¶ 79. However, Megu adds a mandatory service charge to event contracts and event coordinators receive a portion of that service charge. Galvan Decl. ¶ 32, Sept. 4, 2013.

In *Garcia v. La Revise Associates LLC*, No. 08 Civ. 9356, 2011 WL 135009, at *7 (S.D.N.Y. Jan. 13, 2011), the court held that banquet coordinators were entitled to receive tips under the FLSA and NYLL because they "dealt directly with private party hosts in advance of events for planning purposes and worked directly with the hosts and their guests during the events to ensure their satisfaction." The court found that "[t]hese duties constitute[d] more than de minimis customer interaction." *Id.* In *Arencibia v. 2401 Rest. Corp.*, 831 F.Supp.2d 164, 178–79 (D.D.C.2011), the parties disputed whether the event planner (who held the position of Director of Sales, but was responsible for selling, booking, and planning private events) regularly interacted with customers (by greeting, serving, or performing hosting duties) during private parties. However, the event planner did deal directly with the customers in planning "all aspects" of the event. *Id.* at 179. The court found that, despite the dispute regarding how often she attended the private events, "her direct interactions with customers in arranging and planning the private parties [would be] sufficient" to comply with the FLSA. *Id.* at 178.

Even assuming the mandatory service charge is a gratuity, Megu's event coordinators are still entitled to receive their portion of the service charge for the same reasons articulated in *Garcia* and *Arencibia*. It is undisputed that the event coordinators book the private parties, work with the party host to plan the menu, arrange for decorative or presentation requirements, and meet other special needs. Pl. 56.1 ¶ 74. It is also undisputed that the event coordinator is Megu's contact person for the host of private parties. *Id.* at ¶ 75. As in *Arencibia*, it is immaterial that the parties dispute whether the event coordinators interact with customers during the party (*Id.* at ¶ 77) because their "direct interaction with customers in arranging and planning [the] private parties is sufficient." *Arencibia*, 831 F.Supp.2d at 178.

Accordingly, Defendants' motion for summary judgment with respect to Plaintiffs' claims regarding the event coordinators is GRANTED.

## V. *New York Minimum Wage Claims*

■ Plaintiffs' third claim for relief alleges that Megu did not pay employees the minimum wage required by NYLL §§ 650 *et seq.* The hourly cash wage required in New York for food service workers is $5.00. NYLL § 652(4). Unlike the FLSA, New York's Minimum Wage Act—Article 19 of the Labor Law—does not prohibit employers from availing themselves of a tip credit if they require employees to share their tips with employees who do not regularly and customarily receive tips. Indeed, § 196–d expressly states: "Nothing in this subdivision shall be construed as affecting the allowances from the minimum wage for gratuities in the amount determined in accordance with the provisions of article nineteen of this chapter." And, a violation of Section 196–d does not prevent an employer from paying a restaurant server the food service worker minimum wage. Order of Commissioner of Labor M. Patricia Smith on the Report and Recommendations of the 2009 Wage Board, November 5, 2009. Thus, employers are not required, under the NYLL, to reimburse an employee for the difference between the minimum wage and the food service worker minimum wage, (unless of course the violation resulted in employees receiving less than $7.25 an hour—New York's minimum wage). *Id.* Plaintiffs have not alleged that the inclusion of the alleged tip ineligible employees in the tip pool resulted in their receiving less than New York's minimum wage. Thus, Defendants' motion for summary judgment re-

garding Plaintiffs' third cause of action is GRANTED.

## VI. Individual Liability as "Employers" under the NYLL and FLSA

Defendants seek summary judgment on Plaintiffs' NYLL claims against Defendants Origuchi, Yokoyama, and Picardi. Defendants also seek summary judgment on Plaintiffs' FLSA claims against Defendant Origuchi.[9] Pursuant to NYLL §§ 198 and 663, an employee may bring a claim against his employers for their failure to lawfully retain tips and properly pay wages. Defendants contend that Article 6 of the NYLL does not permit plaintiffs to recover from owners, officers, managers, or employees of a corporation, citing *Patrowich v. Chemical Bank*, 63 N.Y.2d 541, 483 N.Y.S.2d 659, 473 N.E.2d 11 (1984) and *Stoganovic v. DiNolfo*, 61 N.Y.2d 812, 473 N.Y.S.2d 972, 462 N.E.2d 149 (1984). But in *Patrowich* and *Stoganovic*, the courts found that the provisions of NYLL § 198—a subjecting *corporate officers* to criminal sanctions for violation of Article 6 indicated a legislative intent that they not be subject to civil liability. *Patrowich*, 63 N.Y.2d at 543, 483 N.Y.S.2d 659, 473 N.E.2d 11; *Stoganovic v. Dinolfo*, 92 A.D.2d 729, 730, 461 N.Y.S.2d 121 (4th Dep't 1983), *aff'd*, 61 N.Y.2d 812, 473 N.Y.S.2d 972, 462 N.E.2d 149 (1984) (emphasis added). Plaintiffs here bring suit against the individual Defendants not as corporate officers, but as employees. "The distinction is critical because courts have held that the rule set forth in *Stoganovic* is limited only to claims for unpaid wages against officers or shareholders 'who do not qualify as employers' under Section 190(3)." *Lauria v. Heffernan*, 607 F.Supp.2d 403, 409 (E.D.N.Y.2009) (citations omitted). The NYLL defines "employer" as "any person ... employing any individual in any occupation, industry, trade, business or service" or "any individual ... acting as employer." NYLL §§ 190(3), 651(6). The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).

The New York Court of Appeals has not answered the question of whether the employer test under the NYLL is the same as under the FLSA. *See Irizarry v. Catsimatidis*, 722 F.3d 99, 117 (2d Cir.2013). But, "[d]istrict courts in this Circuit have interpreted the definition of employer under the New York Labor Law coextensively with the definition used by the FLSA." *Sethi v. Narod*, No. 11 Civ. 2511, 2013 WL 5453320, at *23 (E.D.N.Y. Sept. 30, 2013) (citations and internal quotation marks omitted). This Court will analyze whether the individual Defendants qualify as "employers" under the FLSA and NYLL together, using the FLSA standard, because "any difference [between the two definitions] would be immaterial to the facts of this case." *Kalloo v. Unlimited Mech. Co. of NY, Inc.*, 977 F.Supp.2d 187, 200, 2013 WL 5574774, at *10 (E.D.N.Y. 2013).

Individual liability under the FLSA is premised upon "personal responsibility for making decisions about the conduct of the business that contributed to the violations of the Act." *Baystate Alt. Staffing, Inc. v. Herman*, 163 F.3d 668, 678 (1st Cir.1998). The Second Circuit has adopted an "economic reality" test for determining whether an individual qualifies as an "employer" under the FLSA. *Irizarry*, 722 F.3d at 111. Under the "economic reality" test, courts look to the totality of the circumstances and consider whether the alleged employer "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir.1999) (citation and internal quotation marks omitted). These factors do not "comprise a rigid rule for the identification of an FLSA employer," but rather "provide a nonexclusive and overlapping set of factors to ensure that the economic realities test mandated by the Supreme Court is sufficiently comprehensive and flexible to give proper effect to the broad language of the

---

9. Defendants do not contest that Defendants Yokoyama and Picardi qualify as "employers" under the FLSA.

FLSA." *Irizarry,* 722 F.3d at 105 (citations and internal quotation marks omitted). Due to the "fact-intensive character" of the inquiry, the Second Circuit "rarely" has occasion to review grants of summary judgments to defendants. *Barfield v. New York City Health and Hosps. Corp.,* 537 F.3d 132, 143–44 (2d Cir.2008).

■ Summary judgment is not appropriate here because there are issues of material fact regarding whether the individual Defendants are "employers" under the economic reality test.

### a. *Masahiro Origuchi*

In 2004, when Megu opened, Origuchi lived in Japan; he moved to the United States in 2008. Def. 56.1 ¶¶ 25, 27. Around 2010, Origuchi was made the chair of Food Scope America, Inc.'s board of directors, a position he holds today. *Id.* at ¶ 28. Defendants argue that:

> Plaintiffs cannot demonstrate that Origuchi had operational control to affect the conditions of Plaintiffs' employment with Megu. Origuchi does not play a direct role in the operations of Megu, but instead provides advice to Megu's President who runs the company.... While Origuchi may be aware of decisions of Megu's management or provide advice to Megu's management, Plaintiffs can present no admissible evidence that Origuchi made or had authority to make decisions affecting the conditions of Megu's employees.

Def. Mem. Sum. Judg. 36. The record demonstrates that Origuchi exercised sufficient managerial control to affect the conditions on Plaintiffs' employment. Plaintiffs have offered evidence that Origuchi attended and supervised some pre-shift meetings (the meeting Megu required each day before service began). Drori Decl. ¶ 29, Sept. 9, 2013; Schear Decl. ¶ 33, Sept. 10, 2013. Origuchi allegedly instructed managers to relay messages to the service team. Schear Decl. ¶ 33, Sept. 10, 2013. Megu's management also held mandatory meetings every few months where Origuchi relayed instructions to the employees. Anguiano Decl. ¶ 13. On some occasions at both types of meetings, Origuchi spoke to the staff himself, and on other occa-

sions, he had someone translate his instructions into English, because English is not his native language. Anguiano Decl. ¶ 13; Drori Decl. ¶ 29, Sept. 9, 2013. Plaintiffs have presented evidence that Origuchi affected the conditions of their employment by changing employees' schedules based on their behavior. In one instance recounted by Bareket Drori, Origuchi, together with Koichi Yokoyama, informed the service team that Megu's management would begin including hostesses in the tip pool. Drori Decl. ¶ 30, Sept. 9, 2013. After Drori expressed frustration about having to share his tips with the hostesses to Origuchi, Origuchi yelled at him. *Id.* Shortly after Drori confronted Origuchi, he was informed by Yokoyama and Salvatore Picardi that they were taking him off the schedule. *Id.* at ¶ 31.

Documentary evidence also demonstrates that Origuchi exercised authority over Plaintiffs' conditions of employment. While emphasizing to Megu's management the importance of scheduling employees to work at the last minute if Megu becomes too busy, Origuchi wrote to Yokoyama and others, in an e-mail dated February 12, 2012: "Also let me repeat that even though, it will cause other employee inconvenience, don't hesitate to ask or order them to do [it]." Nussbaum Decl. Ex. W (MEGU 15976). Origuchi made other decisions over scheduling and wages: "Koichi, I think we will need only one sushi chef today(June26(Sun.)) [sic] and especially, there is no reason to use [sic] hourly Sushi chef." *Id.* (MEGU 17842). Other e-mails demonstrate that Origuchi determined employees' rates and methods of payment. *See id.* (MEGU 17855) (e-mail from Origuchi to Yokoyama: "please also note that Wilson's points should not be too small in order not to pay him too little money and in order to prevent too much allocation to other Sushi chefs like Hirasawa's case(as [sic] you know, his last year's annual salary was more than $70,000)").

The record demonstrates that, at the very least, Origuchi supervised and controlled employee work schedules or conditions of employment and determined their rate and method of payment. Thus, Plaintiffs have

provided sufficient evidence to withstand summary judgment.

### b. *Koichi Yokoyama and Salvatore Picardi*

Defendants do not contest that Koichi Yokoyama and Salvatore Picardi are "employers" under the FLSA, presumably because Defendants' own statement of facts includes acknowledgements that they managed Megu. Def. 56.1 ¶¶ 33, 36, 37 (acknowledging that Yokoyama had "responsibility for managing Megu Tribeca" and that Picardi was "a front of house manager" who was "responsible for Plaintiffs' hiring, firing, training and scheduling"). Thus, Yokoyama and Picardi are not entitled to summary judgment under the NYLL, as Defendants have not shown an absence of material fact regarding their status as "employers" under the economic reality test.

### CONCLUSION

For the reasons stated above, Plaintiffs' motion for conditional collective and class certification is GRANTED. Joseph & Kirschenbaum LLP is appointed as class counsel. Plaintiffs' request to publish an internet website where "FLSA Covered Employees" may submit a consent to join form electronically is GRANTED. Plaintiffs' request for equitable tolling is DENIED. Plaintiffs are GRANTED leave to amend their pleadings to reflect the accurate party being sued. Defendants' motion for summary judgment is GRANTED on: (1) Plaintiffs' overtime pay claims; (2) Plaintiffs Fai Lam's and Aureliano Riego's FLSA claims; (3) Plaintiffs' FLSA claims based on improper inclusion of expeditors in the tip pool; (4) Plaintiffs' claims regarding the event coordinators; and (5) Plaintiffs' NYLL §§ 650 *et seq.* minimum wage claims. The balance of Defendants' motion is DENIED.

It is ORDERED that Defendants shall:

• Produce a computer-readable list of all names, last known addresses, alternate addresses, known telephone numbers, known e-mail addresses, social security numbers (where applicable), dates of employment, and job titles for all of "the

FLSA Covered Employees and Class Members" by **January 17, 2014.**

• Post copies of the revised notice and opt-in form at Megu in a location conspicuous to all employees.

It is ORDERED that Plaintiffs shall:

• Submit a revised copy of the proposed notice in accordance with the instructions set forth in this opinion for the Court's final review and approval by **January 17, 2014.**

• File a fully executed confidentiality agreement regarding the use of social security numbers by **January 17, 2014.** Plaintiffs' counsel is authorized to send the revised notice (after the Court grants final approval) and opt-in form to all class members by first class mail and e-mail.

SO ORDERED.